UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80063

GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

     Plaintiff,

CIV-MIDDLEBROOKS

vs.

MAGISTRATE JUDGE
JOHNSON

ANDREA PATTERSON, JOEL PATTERSON,
and MARLENE PATTERSON,

     Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, GOVERNMENT EMPLOYEES INSURANCE COMPANY ("GEICO"), sues

Defendants ANDREA PATTERSON, JOEL PATTERSON, and MARLENE PATTERSON, and

alleges as follows:

1.     This is an action for declaratory relief under 28 U.S.C. 2201 and 2202 and

Fed.R.Civ.P. 57 and for relief attendant thereto and the Court has subject matter jurisdiction over

this cause pursuant to 28 U.S.C. 1332 because the parties are citizens of different states and the

amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

2.     GEICO is an insurance company incorporated in, maintaining its principal place

of business in, and a citizen of the State of Maryland.

3.     Andrea Patterson is a citizen of the State of Florida and resides in Palm Beach

County, Florida.

4.     Joel Patterson is the father of Andrea Patterson and is a citizen of the State of

Florida and resides in Palm Beach County, Florida.

5.     Marlene Patterson is the mother of Andrea Patterson and is a citizen of the State

of Florida and resides in Palm Beach County, Florida.

6.     This Court is the proper venue for disposition of this lawsuit pursuant to 28 U.S.C. §1391.

## COMMON FACTUAL ALLEGATIONS

7.     On June 6, 2006, Andrea Patterson resided at 3858 W. Sandpiper Drive, Apt. 9, Boynton Beach, Florida 33426.

8.     On June 6, 2006, Andrea Patterson was involved in an automobile accident with the driver of another vehicle which she claims was underinsured or uninsured.

9.     At the time of this accident Andrea Patterson owned (and was occupying) her own car with her own policy of insurance with Security National under policy number 4061331361 and she did not have uninsured motorists coverage on her car that was covered by the Security National policy.  GEICO does not have a copy of Andrea Patterson's car insurance with Security National, but such policy is in the custody, care, and control of Andrea Patterson.

10.    At the time of this accident, Andrea Patterson's parents, Joel Patterson and Marlene Patterson, resided at 13675 Cambria Bay Lane, Delray Beach, Florida 33446.

11.    At the time of the accident Joel Patterson and Marlene Patterson owned two vehicles and were the owners and holders of automobile insurance policy no. 4061-33-13-61 (the "Policy") issued to them by GEICO.  A copy of the Policy is attached hereto as **Exhibit "A."** The Policy afforded Joel Patterson and Marlene Patterson (and others deemed to be "insureds" under their policy) uninsured motorist coverage in the amount of $250,000.00.

12.    Under the uninsured motorist portion of that Policy an "insured" is defined as:

       (a)    the individual named in the declarations and his or her spouse if a resident of the same household;

       (b)    relatives of (a) above if residents of his household;

2

    (c)     any other person while occupying an insured auto;

    (d)     any person who is entitled to recover damages because of bodily injury sustained by an insured under (a), (b), and (c) above.

13.     The uninsured motorist portion of the Policy also contains the following

Exclusion (the "owned vehicle exclusion"):

     Bodily injury to an insured while occupying or when struck by any motor vehicle or motorcycle owned by an insured or a relative, which is not insured under the Liability Coverages section of this policy, is not covered.

14.     Lastly, the coverage provided under the uninsured motorist cover section of the

Policy is as follows:

     LOSSES WE PAY

     Under the Uninsured Motorist coverage we will pay damages for bodily injury caused by accident which the insured is legally entitled to recover from the owner or operator of an uninsured auto arising out of the ownership, maintenance, or use of that auto.

15.     On September 8, 2006, counsel for Andrea Patterson wrote to GEICO and requested GEICO tender its uninsured motorist limits to Andrea Patterson under Joel and Marlene Patterson's uninsured motorist policy with GEICO.  A copy of counsel's September 8, 2006, letter is attached hereto as **Exhibit "B."**

16.     On September 18, 2006, GEICO sent separate correspondence to Andrea Patterson and then to Joel and Marlene Patterson setting forth GEICO's reasons for denying that Andrea Patterson is entitled to uninsured motorists coverage under Joel and Marlene Patterson's uninsured motorist policy with GEICO.  Those reasons included:  (1) that Andrea Patterson is not a resident of Joel and Marlene Patterson's household; (2) that Andrea Patterson owned her own vehicle and had separate insurance for that vehicle.   Copies of GEICO's September 18, 2006, letters are attached hereto as **Exhibits "C" and "D."**

SHUTTS & BOWEN LLP / 200 EAST BROWARD BOULEVARD, SUITE 2100 / FORT LAUDERDALE, FLORIDA 33301 / (954) 524-5505

17.    On September 26, 2006, counsel for Andrea Patterson wrote to GEICO and asserted that Andrea Patterson is a resident of Joel and Marlene Patterson's household and that Andrea Patterson is covered under Joel and Marlene Patterson's uninsured motorist policy with GEICO.  A copy of counsel's September 26, 2006, letter is attached hereto as **Exhibit "E."**

18.    GEICO wrote to Andrea Patterson on September 26, 2006, indicating that her claim against the uninsured motorists coverage under Joel and Marlene Patterson's uninsured motorist policy with GEICO was being denied because, among other reasons:  (1) Andrea Patterson is not a resident relative of GEICO's named insureds, Joel and Marlene Patterson; (2) the vehicle that Andrea Patterson was occupying at the time of the accident was not owned by Joel and/or Marlene Patterson; (3) the vehicle that Andrea Patterson was occupying at the time of the accident was not listed as a vehicle on Joel and Marlene Patterson's uninsured motorist policy with GEICO; (4) it appeared from the police report provided to GEICO that Andrea Patterson was the at-fault part in the loss; and, (5) Andrea Patterson had insurance for the vehicle she was occupying at the time of the accident with Security National.  A copy of GEICO's September 26, 2006, letter is attached hereto as **Exhibit "F."**

19.    Counsel for Andrea Patterson then wrote to GEICO again on October 10, 2006, arguing against the validity of the exclusion to coverage asserted by GEICO.  A copy of counsel's October 10, 2006, letter (without enclosures) is attached hereto as **Exhibit "G."**

20.    Counsel for Andrea Patterson then wrote to GEICO again on December 22, 2006, asserting that Joel and Marlene Patterson themselves are entitled to the $250,000.00 in uninsured motorists coverage in order to use the money to take care of their daughter and asserting that GEICO would be guilty of elderly abuse under section 825.102(3), Florida Statutes, and acting in bad faith if GEICO failed to tender is $250,000.00 in uninsured motorists coverage to Joel and

4

Marlene Patterson. Counsel enclosed with his letter a copy of section 825.102(3) and a Florida criminal case dealing with elderly abuse under this statute.   A copy of counsel's December 22, 2006, letter (with enclosures) is attached hereto as **Exhibit "H."**

21.    As a result of the foregoing events, GEICO has been required to retain the undersigned counsel and agreed to pay it a reasonable fee for its services rendered herein.

22.    All conditions precedent to the maintenance of this action have occurred or been waived.

## COUNT I

## DECLARATORY JUDGMENT AS TO ANDREA PATTERSON (UM CLAIM)

23.    GEICO hereby incorporates and realleges paragraphs 1 through 22 set forth above as though fully set forth herein and asserts this action for declaratory relief.

24.    This action seeks a declaration from the Court that there is no coverage under Joel and Marlene Patterson's uninsured motorist policy with GEICO for the injuries sustained by Andrea Patterson because: (1) Andrea Patterson is not an insured as she did not reside at the time of the accident with Joel and Marlene Patterson; (2) even is she is found to have been a resident-relative of Joel and Marlene Patterson at the time of the accident, there is no coverage under Joel and Marlene Patterson's uninsured motorist policy with GEICO based upon the "owned vehicle" exclusion in Joel and Marlene Patterson's policy with GEICO; and (3) even if she is found to be a resident-relative and the "owned vehicle" exclusion is deemed not applicable, she is not entitled to recover because she was at fault for the June 6, 2006, accident and is therefore not legally entitled to recover from the owner or operator of an uninsured auto arising out of the ownership, maintenance, or use of that auto.

25.    There is a *bona fide*, present, practical need for the declarations sought herein.

26.    The declaration pertains to a present, ascertainable set of facts and controversy between the parties.

27.    GEICO's rights under the Policy are dependent upon the present, ascertainable facts and law and the Court's application thereof to the Policy and such facts.

28.    Defendants hereto have a present, antagonistic interest to GEICO under the Policy and subject-matter of this suit, either in fact or law.  Specifically, Andrea Patterson's counsel has communicated to GEICO his assertion that Andrea Patterson is entitled to UM coverage under Joel and Marlene Patterson's uninsured motorist policy with GEICO and has provided a time-limited demand for GEICO to tender its policy limits.  By contrast, GEICO contends that it properly denied uninsured motorist benefits to Andrea Patterson under Joel and Marlene Patterson's uninsured motorist policy with GEICO.

29.    The relief sought by this count is not merely for the purpose of obtaining legal advice from the Court or the answers to questions propounded out of curiosity.

WHEREFORE, GEICO demands final declaratory judgment in its favor, as follows:

I.    for a declaration that that GEICO is without liability to Andrea Patterson for uninsured motorists coverage under Joel and Marlene Patterson's uninsured motorist policy with GEICO because:

a.    Andrea Patterson is not a resident of Joel and Marlene Patterson's household; and/or;

b.    even if Andrea Patterson is found to be a resident of Joel and Marlene Patterson's household, that uninsured motorist coverage is excluded for Andrea Patterson because any bodily injury Andrea Patterson sustained in the accident of June 6, 2006, was sustained by

6

Andrea Patterson while she was occupying a vehicle that she owned and that vehicle was not insured under Joel and Marlene Patterson's Policy with GEICO; and/or

   c.  even if Andrea Patterson is found to be a resident-relative and the exclusion not applicable, that she is not entitled to recover because she was at fault for the June 6, 2006, accident and is therefore not legally entitled to recover from the owner or operator of an uninsured auto arising out of the ownership, maintenance, or use of that auto;

II  that Andrea Patterson, Joel Patterson, and Marlene Patterson take nothing by this action;

III.  costs; and

IV.  further and additional relief as this Court deems just and proper.

**COUNT II**

**DECLARATORY JUDGMENT AS TO ANDREA PATTERSON (ELDER LAW CLAIM)**

   30.  GEICO hereby incorporates and realleges paragraphs 1 through 22 set forth above as though fully set forth herein, and asserts this action for declaratory relief.

   31.  This action seeks a declaration from the Court that Andrea Patteson is not entitled to collect under Joel and Marlene Patterson's uninsured motorist policy with GEICO, that GEICO is not a "caregiver" as defined under Florida's Elderly Abuse statute, Chapter 825, Florida Statutes, and that by not paying the uninsured motorist benefits to Andrea Patterson that GEICO did not neglect, abuse, or exploit a disabled adult.

   32.  There is a *bona fide*, present, practical need for the declarations sought herein.

   33.  The declaration pertains to a present, ascertainable set of facts and controversy between the parties.

   34.  GEICO's rights under the Policy and the Florida Statutes and are dependent upon the present, ascertainable facts and law and the Court's application thereof to the Policy and

7

Florida Statutes and such facts.

35.     Defendants hereto have a present, antagonistic interest to GEICO under the Policy and subject-matter of this suit, either in fact or law.  Specifically, Andrea Patterson's counsel has communicated to GEICO their assertion that Andrea Patterson is entitled to collect under Joel and Marlene Patterson's uninsured motorist policy with GEICO and that if GEICO does not tender its policy limits of uninsured motorists coverage, that GEICO would then be guilty of either neglect, abuse, or exploitation of a disabled adult under Chapter 825, Florida Statutes.

36.     The relief sought by this count is not merely for the purpose of obtaining legal advice from the Court or the answers to questions propounded out of curiosity.

WHEREFORE, GEICO demands final declaratory judgment in its favor, as follows:

I.      for a declaration that that GEICO is without liability to Andrea Patterson under Joel and Marlene Patterson's uninsured motorist policy with GEICO;

II.     for a declaration that that GEICO not a "caregiver" as defined under Florida's Elderly Abuse statute, Chapter 825, Florida Statutes;

III.    that failing to pay UM benefits to or on behalf of Andrea Patterson does not constitute neglect, abuse, or exploitation of a disabled adult;

IV.     that Andrea Patterson, Joel Patterson, and Marlene Patterson take nothing by this action;

V.      costs; and

VI.     further and additional relief as this Court deems just and proper.

## COUNT III

### DECLARATORY JUDGMENT AS TO JOEL AND MARLENE PATTERSON (ELDER LAW CLAIM)

37.     GEICO hereby incorporates and realleges paragraphs 1 through 22 set forth above as though fully set forth herein, and asserts this action for declaratory relief.

8

38.     This action seeks a declaration from the Court that Joel and Marlene Patterson are not entitled to collect under the uninsured motorists portion of their policy with GEICO on behalf of their daughter, that GEICO is not a "caregiver" as defined under Florida's Elderly Abuse statute, Chapter 825, Florida Statutes, and that by not paying the uninsured motorist benefits to or on behalf of Andrea Patterson that GEICO did not neglect, abuse, or exploit an elderly adult.

39.     There is a *bona fide*, present, practical need for the declarations sought herein.

40.     The declaration pertains to a present, ascertainable set of facts and controversy between the parties.

41.     GEICO's rights under the Policy and the Florida Statutes and are dependent upon the present, ascertainable facts and law and the Court's application thereof to the Policy and Florida Statutes and such facts.

42.     Defendants hereto have a present, antagonistic interest to GEICO under the Policy and subject-matter of this suit, either in fact or law.  Specifically, Andrea Patterson's counsel has communicated to GEICO their assertion that Joel and Marlene Patterson are entitled to collect under their uninsured motorists coverage of their Policy with GEICO in order to take care of their daughter, Andrea Patterson, and that if GEICO does not tender its policy limits of uninsured motorists coverage, that GEICO would then be guilty of either  neglect, abuse, or exploitation of an elderly adult under Chapter 825, Florida Statutes.

43.     The relief sought by this count is not merely for the purpose of obtaining legal advice from the Court or the answers to questions propounded out of curiosity.

WHEREFORE, GEICO demands final declaratory judgment in its favor, as follows:

SHUTTS & BOWEN LLP / 200 EAST BROWARD BOULEVARD, SUITE 2100 / FORT LAUDERDALE, FLORIDA 33301 / (954) 524-5505

I.      for a declaration that that GEICO is without liability to Joel and/or Marlene Patterson for uninsured motorists coverage on behalf of Andrea Patterson under their uninsured motorist policy with GEICO for a declaration that GEICO;

II.     for a declaration that that GEICO not a "caregiver" as defined under Florida's Elderly Abuse statute, Chapter 825, Florida Statutes;

III.    that failing to pay UM benefits to or on behalf of Andrea Patterson does not constitute neglect, abuse, or exploitation of a disabled adult;

IV.     that Andrea Patterson, Joel Patterson, and Marlene Patterson take nothing by this action;

V.      costs; and

VI.     further and additional relief as this Court deems just and proper.

**SHUTTS & BOWEN LLP**

By: _Edward J O'Sheehan_
FRANK A. ZACHERL
Florida Bar No.: 868094
fzacherl@shutts.com
EDWARD J. O'SHEEHAN
Florida Bar No.:  0056790
eosheehan@shutts.com
200 East Broward Boulevard
Fidelity Federal Center, Suite 2100
Fort Lauderdale, Florida  33301
Telephone: (954) 524-5505
Facsimile: (954) 888-3071
Attorneys for Plaintiff

# EXHIBIT "A"

# CERTIFIED COVER SHEET

CLAIM NUMBER:  029730839 0101 011          DOL: **06/06/06**
ADJUSTER:      H097L

POLICY NUMBER: **4061-33-13-61**
POLICYHOLDER:  PATTERSON

---

**PROCESS DATE: 05/02/06**          **EFFECTIVE DATE: 05/03/06**

**POLICY TERM:  03/09/06 TO 09/09/06**

NO DASH/RELATED POLICIES

---

**GE**
**A30FL (2/98)**

---

A200FL   (12/02)
A54FL    (08/00)

---

UE30A    (03/91)
A115     (02/02)
A239     (07/88)
A313     (10/97)
A431     (04/02)
UE5      (M-84)

FILE COPY

NOTES:

CERTIFIED POLICY:
K DOSTER
REQUESTED 08/07/2006
PROCESSED  08/08/2006

A F F I D A V I T

I, K. Doster, Claims Coverage Underwriter of Government Employees Insurance Company, a corporation organized and existing under the laws of the state of Maryland, do hereby certify that the attached Policy Declaration sheet was recreated based on records retained in our computer data files. The amendments, endorsements, and policy contract are standard forms with information particular to this policy. Attached is a specimen copy of the policy contract number 4061-33-13-61 issued to JOEL AND MARLENE PATTERSON for Endorsement effective 05/03/06, processed on 05/02/06 and in effect on 06/06/06.


_____
K. Doster
Claims Coverage Underwriter

In the State of Florida, County of Polk, the foregoing instrument was subscribed and sworn before me this 08th day of August, 2006, by K. Doster who is personally known to me or has produced a driver's license for identification.


_____
Notary Public

# GEICO

| FAMILY AUTOMOBILE ENDORSEMENT POLICY DECLARATIONS |

GOVERNMENT EMPLOYEES INSURANCE COMPANY
ONE GEICO PLAZA, WASHINGTON, D.C.  20047-0001

This is a description of your coverage
Please keep for your records
Page 1

Telephone: 1-800-841-7475    Fax: 1-478-744-5710

POLICY PERIOD FROM 03/09/06 TO: 09/09/06 12:01AM LOCAL TIME AT THE ADDRESS OF THE NAMED INSURED.

THE INSURED VEHICLE(S) WILL BE REGULARLY GARAGED IN THE TOWN AND STATE SHOWN IN ITEM 1, EXCEPT AS NOTED IN THE VEHICLE SEGMENT.

| POLICY NUMBER: 4061-33-13-61 | DATE PROCESSED: 05/02/06 | CONTRACT TYPE: A30FL

ENDORSEMENT EFFECTIVE:     05/03/06

<Item 1: Named Insured and Address

JOEL AND MARLENE PATTERSON
13675 CAMBRIA BAY LN
DELRAY BEACH FL  33446-5661

CONTRACT AMENDMENTS:    ALL VEHICLES - A200FL A30FL A54FL

UNIT ENDORSEMENTS:      UE30A (VEH 1,2); A115 (VEH 1,2); A239 (VEH 1,2);
                        A313 (VEH 1,2); A431 (VEH 1,2); UE5 (VEH 1,2)

* * * * * * * * IMPORTANT MESSAGES * * * * * * * * * *

INSUREDS COPY
U-31-DP

(1)



# GEICO

ONE GEICO PLAZA
Washington, D. C. 20076-0001
Telephone: 1-800-841-3000

# Florida
# Family
# Automobile
# Insurance
# Policy

Government Employees Insurance Company
GEICO Casualty Company
GEICO General Insurance Company
GEICO Indemnity Company

SPECIMEN

A-30FL (2-98)

# YOUR POLICY INDEX

Page

**SECTION I - Liability Coverages**
**Your Protection Against Claims From Others**

Definitions ................................................................3
Losses We Will Pay For You .................................3
Additional Payments We Will Make Under
    The Liability Coverages.................................4
        Legal Expenses And Court Costs
        Bail And Appeal Bonds
        First Aid Expenses
Exclusions: When Section I Does Not Apply .........4
Persons Insured: Who Is Covered .........................4
Financial Responsibility Laws ..............................5
Limits Of Liability ...............................................5
Other Insurance ..................................................5
Conditions ..........................................................5
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

**SECTION II - Personal Injury Protection Coverage**

Personal Injury Protection (Part I)........................6
Payments We Will Make ......................................6
Exclusions ..........................................................6
Limits Of Liability; Application Of Deductible;
    Other Insurance..............................................7
Definitions..........................................................7
Policy Period; Territory ........................................8
Conditions..........................................................8
    Notice
    Action Against The Company
    Proof Of Claim; Medical Reports and
        Examinations; Payment of Claim Withheld
    Reimbursement And Subrogation
    Special Provisions For Rented Or Leased Vehicles
    Arbitration
Modification Of Policy Coverages (Part II)..............8
Provisional Premium (Part III)..............................9

**SECTION III - Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**

Definitions..........................................................9
Losses We Will Pay .............................................10
    Comprehensive(Excluding Collision) ...............10
    Collision........................................................10
Additional Payments We Will Make Under The
    Physical Damage Coverages..........................10
Car Rental If Your Car Is Stolen ..........................10

Page

Exclusions: When The Physical Damage
    Coverages Do Not Apply................................10
Limit Of Liability ................................................11
Other Insurance .................................................11
Conditions..........................................................11
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation
**SECTION IV - Uninsured Motorists Coverage**
**Your Protection For Injuries Caused By**
**Uninsured And Hit-And-Run Motorists**

Definitions ........................................................12
Losses We Pay ...................................................13
Exclusions: When Section IV Does Not Apply      13
Limits Of Liability ..............................................13
Other Insurance .................................................13
Disputes Between Us And An Insured ...................13
Trust Agreement.................................................14
Conditions..........................................................14
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Proof Of Claim - Medical Reports
    Payment Of Loss
**SECTION V - General Conditions**
**The Following Apply To All Coverages In This Policy**

Territory - Policy Period......................................15
Premium.............................................................15
Changes.............................................................15
Assignment.........................................................15
Cancellation By The Insured.................................15
Cancellation By Us..............................................15
Cancellation By Us Is Limited...............................16
Renewal.............................................................16
Mediation Of Claims............................................16
Other Insurance .................................................16
Action Against Us................................................16
Dividend Provision...............................................16
Declarations.......................................................16
Fraud And Misrepresentation ..............................16
Examination Under Oath......................................17
Terms Of Policy Conformed To Statutes .................17
**SECTION VI - Amendments And Endorsements**

Special Endorsement
United States Government Employees .....................17

A-30FL (2-98)

Whenever "he," "his," "him," or "himself" appears in this policy, you may read "she," "her," "hers," or "herself."

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with *you*, the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:

## SECTION I - LIABILITY COVERAGES

### Bodily Injury Liability And Property Damage Liability
### Your Protection Against Claims From Others

**DEFINITIONS**

The words italicized in Section I of this policy are defined below.

1. *"Auto business"* means the business of selling, repairing, servicing, storing, transporting or parking of autos.

2. *"Bodily injury"* means bodily injury to a person, including resulting sickness, disease or death.

3. *"Farm auto"* means a truck type vehicle with a load capacity of 2,000 pounds or less, not used for commercial purposes other than farming.

4. *"Insured"* means a person or organization described under PERSONS INSURED.

5. *"Non-owned auto"* means a *private passenger*, *farm* or *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

6. *"Owned auto"* means:

    (a) a vehicle described in this policy for which a premium charge is shown for these coverages;

    (b) a *trailer* owned by *you*;

    (c) a *private passenger*, *farm* or *utility auto*, ownership of which *you* acquire during the policy period, if

        (i) it replaces an *owned auto* as defined in (a) above; or

        (ii) we insure all *private passenger*, *farm* and *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;

    (d) a *temporary substitute auto*.

7. *"Private passenger auto"* means a four-wheel private passenger, station wagon or jeep-type auto, including a *farm* or *utility auto* as defined.

8. *"Relative"* means a person related to *you* who resides in *your* household, including *your* ward or foster child.

9. *"Temporary substitute auto"* means a private passenger, farm or utility auto or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

10. *"Trailer"* means a vehicle designed to be towed by a *private passenger auto*. If the vehicle is being used for business or commercial purposes, it is a *trailer* only while used with a *private passenger*, *farm* or *utility auto*. *Trailer* also means a farm wagon or farm implement used with a *farm auto*.

11. *"Utility auto"* means a vehicle, other than a *farm auto*, with a load capacity of 2,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

12. *"War"* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

13. *"You"* means the policyholder named in the declarations and his or her spouse if a resident of the same household.

## LOSSES WE WILL PAY FOR YOU

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1. *bodily injury*, sustained by a person, and
2. damage to or destruction of property,

arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

A-30FL (2-96) Page 3 of 17

ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.

2. All court costs charged to an *insured* in a covered law suit.

3. All interest accruing on that amount of a judgment which represents our limit of liability, until we have paid, offered or deposited in court that part of the judgment not exceeding the limit of our liability.

4. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of liability.

5. Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an insured auto, not to exceed $250 per bail bond.

6. Costs incurred by any *insured* for first aid to others at the time of an accident involving an insured auto.

7. Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.

8. All reasonable costs incurred by an *insured* at our request.

## EXCLUSIONS

When Section I Does Not Apply

1. We do not cover any *bodily injury* to any *insured* or any member of an *insured's* family residing in the *insured's* household.

   This exclusion does not apply if the insured or member of the insured's household is injured as a passenger in a motor vehicle insured under this policy while that vehicle is being driven by a person who is not a relative.

2. Section I does not apply to any vehicle used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

3. We do not provide liability coverage for any person who intentionally causes *bodily injury* or property damage.

4. We do not cover *bodily injury* or property damage that is insured under a nuclear liability policy. This exclusion applies even if the limits of that policy are exhausted.

5. *Bodily injury* or property damage arising from the operation of farm machinery is not covered.

6. *Bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured* is not covered.

   However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workmen's compensation law.

7. We do not cover *bodily injury* to a fellow employee of an*insured* (other than *you* ) injured in the course of his employment if the *bodily injury* arises from the use of an auto in the business of his employer, and if benefits are payable under a workmen's compensation policy.

8. We do not cover an *owned auto* while used by a person (other than *you* or a *relative* or *your* or *your relative's* partner, agent or employee) when he is employed or otherwise engaged in the *auto business*.

9. A *non-owned auto* while maintained or used by a person while he is employed or otherwise engaged in any *auto business* is not covered.

   However, coverage does apply to a *non-owned private passenger auto* used by *you, your* chauffeur or a domestic servant, while engaged in the business of an *insured.*

10. We do not cover damage to:

    (a) property owned, or transported by an *insured*; or
    (b) property rented to or in charge of an *insured* other than a residence or private garage.

11. We do not cover an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.

12. We do not cover:

    (a) the United States of America or any of its agencies;
    (b) any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act.

## PERSONS INSURED

Who Is Covered

   Section I applies to the following as *insureds* with regard to an *owned auto:*

1. *you;*

2. any other person using the auto with *your* permission. The actual use must be within the scope of that permission;

3. any other person or organization for his or its liability because of acts or omissions of an *insured* under 1. or 2. above.

Section I applies to the following with regard to a *non-owned auto:*

1. *you* and *your relatives* when driving the *non-owned auto.* Such use must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission.

2. a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above..

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law.

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. We will not provide Bodily Injury Liability Coverage under this provision if that coverage is not purchased and shown in the policy declarations. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.

2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.

3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If the *insured* has other applicable insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply to Section I:

1. NOTICE

As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:

   (a) the identity of the *insured;*
   (b) the time, place and details of the occurrence;
   (c) the names and addresses of the_injured, and of any witnesses; and
   (d) the names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an *insured,* he must promptly send us each demand, notice, summons or other process received.

2. TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and assist us, if requested:

   (a) in the investigation of the occurrence;
   (b) in making settlements;
   (c) in the conduct of suits; and
   (d) in enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage; and
   (e) at trials and hearings;
   (f) in securing and giving evidence; and
   (g) by obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

4. ACTION AGAINST US

No suit will lie against us:

   (a) unless the *insured* has fully complied with all the policy's terms and conditions, and
   (b) until the amount of the *insured's* obligation to pay has been finally determined, either:

(i) by a final judgment against the *insured* after an actual trial; or

(ii) by written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or of his estate will not relieve us of our obligations..

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

When a person has been paid damages by us under this policy and also recovers from another, that person shall:

(a) hold in trust for us the amount recovered; and
(b) reimburse us to the extent of our payment.

## SECTION II - PERSONAL INJURY PROTECTION COVERAGE AND AUTOMOBILE MEDICAL PAYMENTS

### PART I - PERSONAL INJURY PROTECTION

#### PAYMENTS WE WILL MAKE

The Company will pay, in accordance with the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the injured person:

(a) 80% of *medical expenses*; and
(b) 60% of *work loss*;
(c) *replacement services expenses*; and
(d) death benefits incurred as a result of *bodily injury*, caused by an accident arising out of the ownership, maintenance or use of a *motor vehicle* and sustained by:

(1) *you* or any *relative* while *occupying* a *motor vehicle* or, while a *pedestrian* through being struck by a *motor vehicle*; or
(2) any other person while *occupying* the *insured motor vehicle* or, while a *pedestrian*, through being struck by the *insured motor vehicle*.

In addition, we will pay, under Automobile Medical Payments coverage (applies only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage), subject to the coverage limit:

(a) the portion of any claim for Personal Injury Protection medical expense benefits otherwise covered but not payable due to the coinsurance provision of the Personal Injury Protection coverage. This is the 20% of *medical expenses* not covered in (a) of the first paragraph of this section;
(b) any *medical expenses* incurred that exceed the Personal Injury Protection medical expense coverage limit; and
(c) *medical expenses* incurred by an *insured* or *relative* that result from injuries received while *occupying* a *motor vehicle* or as a *pedestrian* in an accident that occurs outside the state of Florida.

#### EXCLUSIONS

This insurance does not apply:

(a) to any *insured* injured while *occupying* any *motor vehicle* owned by that *insured* and which is not an *insured motor vehicle* under this insurance;

(b) to any person while operating the *insured motor vehicle* without *your* express or implied consent;

(c) to any person, if such person's conduct contributed to his *bodily injury* under any of the following circumstances:

(i) causing *bodily injury* to himself intentionally;
(ii) while committing a felony;

(d) to *you* or any *relative* for *work loss* if an entry in the schedule or declarations indicates such coverage does not apply;

(e) to any *pedestrian*, other than *you* or any *relative*, not a legal resident of the State of Florida;

(f) to any person, other than *you*, if such person is the *owner* of a *motor vehicle* with respect to which security is required under the Florida Motor Vehicle No-Fault law, as amended;

(g) to any person, other than *you* or any *relative*, who is entitled to personal injury protection benefits from the *owner* or *owners* of a *motor vehicle* which is not an *insured motor vehicle* under this insurance or from the *owner's* insurer; or

(h) to any person who sustains *bodily injury* while *occupying* a *motor vehicle* located for use as a residence or premises.

A-30FL (2-98) Page 6 of 17

## LIMIT OF LIABILITY; APPLICATION OF DEDUCTIBLE; OTHER INSURANCE

Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains *bodily injury* as the result of any one accident shall be $10,000; provided that payment for death benefits included in the foregoing shall in no event exceed $5,000.

Any amount payable under this insurance shall be reduced by the amount of benefits an injured person has recovered for the same elements of loss under the workmen's compensation laws of any state or the federal government.

If benefits have been received under the Florida Motor Vehicle No-Fault Law, as amended, from any insurer for the same items of loss and expense for which benefits are available under this policy, we, shall not be liable to make duplicate payments to or for the benefit of the injured person, but the insurer paying such benefits shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses incurred in processing the claim.

The amount of any deductible stated in the declarations shall be deducted from the total amount of all sums otherwise payable by us with respect to all loss and expenses incurred by or on behalf of each person to whom the deductible applies and who sustains *bodily injury* as the result of any one accident, and if the total amount of such loss and expense exceeds such deductible, the total limit of benefits we are obligated to pay shall then be the difference between such deductible amount and the applicable limit of our liability. Such deductible will not apply to the death benefit.

If an entry in the declarations so indicates, any amount payable under this insurance to *you* or any *relatives* shall be reduced by any benefits payable by the Federal Government to active or retired military personnel and their dependent relatives. If such benefits are not available at the time of loss, we shall have the right to recompute and charge the appropriate premium.

## DEFINITIONS

The definitions of the terms *"insured"* and *"you"* under Section I apply to Section II also.

When used in reference to this Section: *"bodily injury"* means bodily injury, sickness, or disease, including death at any time resulting therefrom.

*"Insured motor vehicle"* means a *motor vehicle*:

(a) of which *you* are the *owner*, and

(b) with respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and

(c) for which a premium is charged, or which is a trailer, other than a mobile home, designed for use with a *motor vehicle*;

*"Medical expenses"* means reasonable expenses for necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs;

*"Motor vehicle"* means any self-propelled vehicle of 4 or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semi-trailer designed for use with such vehicle.

A *motor vehicle* does not include:

(a) any *motor vehicle* which is used in mass transit other than public school transportation and designed to transport more than 5 passengers exclusive of the operator of the *motor vehicle* and which is owned by a municipality, a transit authority, or a political subdivision of the state; or

(b) a mobile home.

*"Occupying"* means in or upon or entering into or alighting from;

*"Owner"* means a person or organization who holds the legal title to a *motor vehicle*, and also includes:

(a) a debtor having the right to possession, in the event a *motor vehicle* is the subject of a security agreement, and

(b) a lessee having the right to possession, in the event of a *motor vehicle* is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more, and

(c) a lessee having the right to possession, in the event a *motor vehicle* is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance;

*"Pedestrian"* means a person while not an occupant of any self-propelled vehicle;

*"Relative"* means a person related to *you* by blood, marriage or adoption (including a ward or foster child) who is a resident of the same household as *you*;

*"Replacement services expenses"* means with respect to the period of disability of the injured person all expenses reasonably incurred in obtaining from others

A-30FL (2-98) Page 7 of 17

Case 9:07-cv-80009-KLR Document 1 Entered on FLSD Docket 01/24/2007 Page 22 of 79

ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household;

*"Work loss"* means with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person.

## POLICY PERIOD; TERRITORY

The insurance under this Section applies only to accidents which occur during the policy period:

    (a) in the State of Florida;

    (b) as respects *you* or a *relative*, while *occupying* the *insured motor vehicle* outside the State of Florida but within the United States of America, its territories or possessions or Canada; and

    (c) as respects *pedestrians* injured when struck by the *insured motor vehicle*, if they are not the *owner* of a vehicle for which coverage is required to be maintained under the Florida No-Fault Law.

    (d) Additionally, applicable to the Medical Payments coverage only, if included on the policy, we will cover *you* or any *relative* for injuries incurred while *occupying* a *motor vehicle* within the United States of America, its territories or possessions or Canada.

## CONDITIONS

1. Notice. In the event of an accident, written notice of the loss must be given to us or any of our authorized agents as soon as practicable. If any injured person or his legal representatives shall institute legal action to recover damages for *bodily injury* against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to us by such injured person or his legal representative.

2. Action Against the Company. No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all terms of this insurance, nor until 30 days after the required notice of accident and reasonable proof of claim has been filed with us.

3. Proof of Claim; Medical Reports and Examinations; Payment of Claim Withheld. As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to an examina-

tion, we shall not be liable for subsequent personal protection benefits. Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

The *insured* and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require.

4. Reimbursement and Subrogation. In the event of payment to or for the benefits of any injured person under this insurance;

    (a) the Company is subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.

    (b) the Company providing personal injury protection benefits on a private passenger motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the owner or insurer of the owner of a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while *occupying*, or while a *pedestrian* through being struck by, such commercial motor vehicle.

5. Special Provision for Rented or Leased Vehicles. Notwithstanding any provision of this coverage to the contrary, if a person is injured while *occupying*, or through being struck by, a *motor vehicle* rented or leased under a rental or lease agreement which does not specify otherwise in bold type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary.

6. Arbitration. The Company, under this coverage, is entitled to binding arbitration of any claims dispute involving medical benefits arising between us and any person providing medical services or supplies if that person has agreed to accept assignment of personal injury protection benefits. The provisions of Chapter 682 relating to arbitration shall apply. The prevailing party shall be entitled to attorney's fees and costs.

## PART II - MODIFICATION OF POLICY COVERAGES

Any Automobile Medical Payments insurance, any Uninsured Motorists coverage or any excess Underinsured Motorists coverage afforded by the policy shall be excess over any Personal Injury Protection benefits paid or payable or which would be available but for the application of a deductible.

Regardless of whether the full amount of Personal Injury Protection benefits have been exhausted, any Medical Payments insurance afforded by this policy shall pay the portion of any claim for Personal Injury Protection *medical expenses* which are otherwise covered but not payable due to the limitation of 80% of *medical expenses* contained in Section I but shall not be payable for the amount of the deductible selected.

## PART III - PROVISIONAL PREMIUM

It is agreed that in the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law, as amended, providing for the exemption of persons from tort liability, the premium stated in the declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the named insured pursuant to Section 12 (2) (e) of the Florida Motor Vehicle No-Fault Law, as amended, with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated in the declarations, the *insured* shall pay to the Company the excess as well as the amount of any return premium previously credited or refunded.

## SECTION III - PHYSICAL DAMAGE COVERAGES
### Your Protection For Loss Or Damage To Your Car

## DEFINITIONS

The definitions of the terms *"auto business," "farm auto," "non-owned auto," "private passenger auto," "relative," "temporary substitute auto," "utility auto," "you,"* and *"war"* under Section I apply to Section III also. Under this Section, the following special definitions apply:

1. *"Actual cash value"* is the replacement cost of the auto or property less *depreciation or betterment*.

2. *"Betterment"* is improvement of the auto or property to a value greater than its pre-loss condition.

3. *"Collision"* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.

4. *"Comprehensive"* means *loss* caused other than by *collision* and includes the following causes:

    (a) missiles;
    (b) falling objects;
    (c) fire;
    (d) lightning;
    (e) theft;
    (f) larceny;
    (g) explosion;
    (h) earthquake;
    (i) windstorm;
    (j) hail;
    (k) water;
    (l) flood;
    (m) malicious mischief;
    (n) vandalism;
    (o) riot;
    (p) civil commotion; or
    (q) colliding with a bird or animal.

5. *"Depreciation"* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.

6. *"Insured"* means:

    (a) regarding the *owned auto*:

        (i) you and *your relatives*;
        (ii) a person or organization maintaining, using or having custody of the auto with *your* permission, if his use is within the scope of that permission.

    (b) regarding a *non-owned auto*:

        you and *your relatives*, when driving the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

7. *"Loss"* means direct and accidental loss of or damage to:

    (a) an insured auto, including its equipment; or
    (b) other property insured under this section.

8. *"Owned auto"* means:

    (a) any vehicle described in this policy for which a specific premium charge indicates there is coverage;
    (b) a *private passenger, farm* or *utility auto* or a *trailer*, ownership of which is acquired by *you* during the policy period; if

        (i) it replaces an *owned auto* as described in (a) above, or
        (ii) we insure all *private passenger, farm, utility autos* and *trailers* owned by *you* on the date of such acquisition and *you* request us

to add it to the policy within 30 days after-
ward;

   (c) a *temporary substitute auto*.

9. *"Trailer"* means a trailer designed for use with a
*private passenger auto* and not used as a home, office,
store, display or passenger trailer.

## LOSSES WE PAY

### Comprehensive (Excluding *Collision*)

1. We will pay for each *loss*, less the applicable de-
ductible, caused other than by *collision* to the *owned* or
*non-owned auto*. This includes glass breakage.

   No deductible will apply to *loss*:

   (a) to windshield glass;
   (b) caused by fire, lightning, smoke, or smudge; or
   (c) as a result of damage sustained while the vehicle
      is being transported on any conveyance.

   At the option of the *insured*, breakage of glass caused
by *collision* may be paid under the Collision coverage, if
included in the policy.

2. We will pay, up to $200 per occurrence, less the ap-
plicable deductible, for *loss* to personal effects due to:

   (a) fire;
   (b) lightning;
   (c) flood;
   (d) falling objects;
   (e) earthquake;
   (f) explosion; or
   (g) theft of the entire automobile.
No deductible will apply to *loss* from fire or light-
ning.

   The property must be owned by *you* or a *relative*,
and must be in or upon an *owned auto*.

3. *Losses* arising out of a single occurrence shall be
subject to no more than one deductible.

### Collision

1. We will pay for *collision loss* to the *owned* or *non-
owned auto* for the amount of each *loss* less the applica-
ble deductible.

2. We will pay up to $200 per occurrence, less the ap-
plicable deductible, for *loss* to personal effects due to a
*collision*. The property must be owned by *you* or a *rela-
tive*, and must be in or upon an *owned auto*.

3. *Losses* arising out of a single occurrence shall be
subject to no more than one deductible.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the *insured* for transportation ex-
penses incurred during the period beginning 48 hours
after a theft of the entire auto covered by Comprehensive
coverage under this policy has been reported to us and
the police. Reimbursement ends when the auto is re-
turned to use or we pay for the *loss*.

   Reimbursement will not exceed $20.00 per day nor
$600.00 per *loss*.

2. We will pay for *loss* to any of the following equip-
ment (including *loss* to accessories and antennas):

   (a) car phone;
   (b) citizen's band radio;
   (c) two-way mobile radio;
   (d) scanning monitor receiver; or
   (e) device designed for the recording and/or repro-
      duction of sound.

   We will pay only if the equipment at the time of *loss*:

   (a) is permanently installed in or upon an *owned
      auto*; and
   (b) that auto is insured under the appropriate cover-
      age.

3. We will pay general average and salvage charges for
which the *insured* becomes legally liable when the auto
is being transported.

## EXCLUSIONS

### When The Physical Damage Coverages Do Not Apply

1. An auto used to carry passengers or goods for hire is
not covered. However, a vehicle used in an ordinary car
pool on a ride sharing or cost sharing basis is covered.

2. *Loss* due to *war* is not covered.

3. We do not cover *loss* to a *non-owned auto* when
used by the *insured* in the *auto business*.

4. There is no coverage for *loss* caused by and limited
to wear and tear, freezing, mechanical or electrical break-
down or failure, unless that damage results from a cov-
ered theft.

5. We do not cover road damage to tires.

6. *Loss* due to radioactivity is not covered.

7. *Loss* to any tape, wire, record disc or other medium
for use with a device designed for the recording and/or
reproduction of sound is not covered.

8. We do not cover *loss* to any radar detector.

9. We do not cover any vehicle or *trailer* when used for
business or commercial purposes other than a *farm auto*.

10. We do not cover *loss* for custom options on an *owned auto*, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us.

## LIMIT OF LIABILITY

The limit of our liability for *loss*:

1. is the *actual cash value* of the property at the time of the *loss*;

2. will not exceed the cost to repair or replace the property, or any of its parts, with other of like kind and quality and will not include compensation for any diminution in the property's value that is claimed to result from the *loss*.

3. to personal effects arising out of one occurrence is $200;

4. to a *trailer* not owned by *you* is $500;

5. for custom options is limited to the *actual cash value* of equipment, furnishings or finishings (including paint) installed in or upon the vehicle only by the auto factory or an authorized auto dealer and included in the purchase price of the vehicle.

*Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

## OTHER INSURANCE

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available. Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply only to the Physical Damage coverages:

1. NOTICE.

As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:

   (a) the identity of the *insured*;
   (b) a description of the auto or *trailer*;
   (c) the time, place and details of the *loss*; and
   (d) the names and addresses of any witnesses.

In case of theft, the *insured* must promptly notify the police.

2. TWO OR MORE AUTOS

If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.

3. ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and assist us, if requested:

   (a) in the investigation of the *loss*;
   (b) in making settlements;
   (c) in the conduct of suits;
   (d) in enforcing any right of subrogation against any legally responsible person or organization;
   (e) at trials and hearings;
   (f) in securing and giving evidence; and
   (g) by obtaining the attendance of witnesses.

4. ACTION AGAINST US

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

5. *INSURED'S* DUTIES IN EVENT OF *LOSS*

In the event of *loss* the *insured* will:

   (a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
   (b) File with us, within 91 days after *loss*, his sworn proof of loss including all information we may reasonably require.
   (c) At our request, the *insured* will exhibit the damaged property and submit to examination under oath.

6. APPRAISAL

If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the actual *cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

**7. PAYMENT OF LOSS**

We may at our option:

(a) pay for the *loss*; or

(b) repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

**8. NO BENEFIT TO BAILEE**

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

**9. SUBROGATION**

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

---

**SECTION IV - UNINSURED MOTORISTS COVERAGE**
Protection For *You* And *Your* Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorists

**DEFINITIONS**

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1. *"Hit-and-run auto"* is an auto causing *bodily injury* to an *insured* and whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:

(a) reports the accident as soon as possible to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;

(b) files with us as soon as possible a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person.

2. *"Insured"* means:

(a) the individual named in the declarations and his or her spouse if a resident of the same household;

(b) *relatives* of (a) above if residents of his household;

(c) any other person while *occupying* an *insured auto*;

(d) any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

If there is more than one *insured*, our limits of liability will not be increased.

3. *"Insured auto"* is an auto:

(a) described in the declarations and covered by the Bodily Injury Liability coverage of this policy;

(b) temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(c) operated by *you* or *your* spouse if a resident of the same household.

But the term *"insured auto"* does not include:

(i) an auto used to carry passengers or goods for hire, except in a car-pool;

(ii) an auto being used without the owner's permission; or

(iii) under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.

4. *"Occupying"* means in, upon, entering into or alighting from.

5. *"State"* includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

6. *"Uninsured auto"* is an auto:

(a) which has no liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the *state* in which the *insured auto* is principally garaged at the time of the accident; or

(b) for which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an *insured*; or

(c) a *hit-and-run auto*.

This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

The term *"uninsured auto"* does not include:

(a) an *insured auto*;

(b) an auto owned or operated by a self insurer within the meaning of any motor vehicle finan-

cial responsibility law, motor carrier law or any similar law;

(c) an auto owned by the United States of America, any other national government, a *state*, or a political subdivision of any such government or its agencies;

(d) a land motor vehicle or *trailer* operated on rails or crawler treads or located for use as a residence or premises; and

(e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

## LOSSES WE PAY

Under the Uninsured Motorists coverage we will pay damages for *bodily injury* caused by accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured auto* arising out of the ownership, maintenance or use of that auto.

However, we will not pay until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlements.

## EXCLUSIONS

### When Section IV Does Not Apply

1. This coverage does not apply to *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

2. *Bodily injury* to an *insured* while *occupying* or when struck by any motor vehicle or motorcycle owned by an *insured* or a *relative*, which is not insured under the Liability Coverages section of this policy, is not covered.

3. The Uninsured Motorists coverage will not benefit any workmen's compensation insurer, self insurer, or disability benefits insurer.

4. We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.

5. This coverage does not apply to any damages for pain and suffering that the *insured* may be legally entitled to recover against an uninsured motorist unless the injury or disease caused by the uninsured motorist accident resulted in:

(a) significant and permanent loss of an important bodily function; or

(b) permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement; or

(c) significant and permanent scarring or disfigurement; or

(d) death.

6. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

## LIMITS OF LIABILITY

1. The limit of liability for Uninsured Motorists coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by one person as the result of one accident. The most we will pay for all such damages, sustained by one person as the result of one accident, is the sum of the "each person" limits for Uninsured Motorists coverage shown in the declarations.

2. The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of one accident. The most we will pay for all such damages, sustained by two or more persons as the result of one accident, is the sum of the "each accident" limits for Uninsured Motorists coverage shown in the declarations.

3. The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate the benefits available to an *insured* under any:

(a) workers' compensation law;

(b) personal injury protection benefits;

(c) disability benefits law or similar law; or

(d) automobile medical expense coverage.

4. The limit of liability for Uninsured Motorist coverage shall be over and above, but shall not duplicate any amount paid or payable:

(a) under any motor vehicle liability insurance coverages; or

(b) by or on behalf of the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident.

## OTHER INSURANCE

When an *insured* occupies an auto not described in this policy, and not owned by that *insured* or a *relative*, this insurance is excess over any other similar insurance available to the *insured* and the insurance which applies to the *occupied* auto is primary.

If the *insured* has other insurance against a loss covered by the Uninsured Motorist provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

## DISPUTES BETWEEN US AND AN *INSURED*

1. Disputes between an *insured* and us as to liability and damages may be submitted to arbitration. Arbitration must be agreed to in writing between the *insured* and us.

third one.

The cost of the arbitration and any expenses for experts shall be paid by the party who hired them. The cost of the third arbitrator shall be paid equally by the parties.

2. If the *insured* and we cannot agree to arbitrate or agree to a third arbitrator, the *insured* shall:

    (a) sue the owner or driver of the *uninsured auto* and us in a court of competent jurisdiction. If the owner or driver is unknown, name us as the defendant.

    (b) when suit is filed, immediately give us copies of the suit papers.

3. If the *insured* agrees to settle with another insurer for their limits of liability coverage, the *insured* must submit this agreement to us in such settlement if the *insured* intends to pursue an uninsured motorist claim against us.

4. If within 30 days after receipt of the settlement agreement, we do not:

    (a) approve the settlement and the signing of the full release;

    (b) waive our subrogation rights; and

    (c) agree to arbitrate the claim,

the *insured* may then file suit against us and the person(s) legally liable.

5. Any award against us shall be binding and conclusive against us and the *insured* up to our coverage limit.

TRUST AGREEMENT

Whenever we make a payment under this coverage:

1. We will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury*.

2. The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3. At our written request, the *insured*, in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The *insured* will pay us out of the recovery for our expenses, costs and attorney's fees.

4. The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

CONDITIONS

The following conditions apply only to the Uninsured Motorist coverage:

1. NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

    (a) the identity of the *insured*;

    (b) the time, place and details of the accident; and

    (c) the names and addresses of the injured, and of any witnesses.

If the *insured* or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

2. ASSISTANCE AND COOPERATION OF THE *INSURED*

After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us.

3. ACTION AGAINST US

Suit will not lie against us unless the *insured* or his legal representative have fully complied with all the policy terms.

4. PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

The *insured* and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require. Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

5. PAYMENT OF LOSS

Any amount due is payable:

    (a) to the *insured* or his authorized representative;

    (b) if the *insured* is a minor, to his parent or guardian; or

(c) if the *insured* is deceased, to his surviving spouse; otherwise

(d) to a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.

## SECTION V - GENERAL CONDITIONS
### These Conditions Apply To All Coverages In This Policy.

### 1. TERRITORY - POLICY PERIOD

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories and possessions, or Canada and while an *owned auto* is being transported between ports thereof.

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the declarations.

### 2. PREMIUM

When *you* dispose of, acquire ownership of, or replace a *private passenger*, *farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

### 3. CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

The premium for each auto is based on the information we have in *your* file. *You* agree:

(a) that we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) that *you* will cooperate with us in determining if this information is correct and complete.

(c) that *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

### 4. ASSIGNMENT

Assignment of interest under this policy will not bind us without our consent.

If you die, this policy will cover:

(a) *your* surviving spouse;

(b) the executor or administrator of *your* estate, but only while acting within the scope of his duties;

(c) any person having proper temporary custody of the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate; and

(d) under the medical payments coverage, a person who was a *relative* at the time of *your* death.

### 5. CANCELLATION BY THE *INSURED*

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

However, *you* may not cancel during the first two months immediately following *your* policy's effective date except:

(a) upon total destruction of all of the *owned autos*;

(b) upon transfer of ownership of all of the *owned autos*;

(c) if *you* obtained a replacement policy covering an *owned auto* elsewhere; or

(d) when we notify *you* that the premium charged must be increased to comply with our rate filings or the applicable laws of Florida. In such event, *you* have ten days in which to request cancellation of the policy and a return of the unearned premium.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

### 6. CANCELLATION BY US

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective. This notice will be mailed by United States Post Office certificate of mailing.

We will mail this notice:

(a) 10 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;

(b) 45 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

A-30FL (2-96) Page 15 of 17

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed on a pro-rated basis according to our manuals.

Payment or tender of unearned premium is not a condition of cancellation.

## 7.  CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately, we will not cancel unless:

(a)  *You* do not pay the premiums for this policy or any installment when due to us or our agent; or

(b)  Any *insured* has had his driver's license or motor vehicle registration under suspension or revocation; either:

    (i)  during the current policy period; or

    (ii)  during the preceding 180 days if this is a new policy; or

(c)  There has been fraud or material misrepresentation under the policy in *your* application or in making a claim.

We will not cancel a new policy during the first 60 days immediately following the effective date of the policy for nonpayment of premium unless the reason for the cancellation is the issuance of a check for the premium that is dishonored for any reason.

Nothing in this section will require us to renew this policy.

## 8.  RENEWAL

We agree that we will not refuse to renew or continue this policy unless a written notice of our refusal to renew or continue is mailed to *you*, at the address shown in this policy, at least 45 days prior to the expiration date. This notice will be mailed by United States Post Office certificate of mailing. The mailing or delivery of this notice will be sufficient proof of notice.
If:

(1)  *you* do not pay the premium as required to renew this policy; or

(2)  *you* have informed us or our agent that *you* wish the policy cancelled or not renewed; or

(3)  *you* do not accept our offer to renew; or

(4)  *you* refuse to provide us with renewal classification and rating information as we may require;

it will be construed to mean that *you* have refused our renewal offer and the policy will expire without notice.

If this policy has been in effect for 5 years or more we will not refuse to renew solely because an *insured* was involved in a single traffic accident.

## 9.  MEDIATION OF CLAIMS

In the event of a claim for *bodily injury* amounting to $10,000 or less, or any property damage claim, either party may demand mediation of the claim, provided that suit has not yet been filed. Only one mediation may be demanded for each claim, unless both parties agree to more than one mediation. Mediation is not binding on either party.

A request for mediation shall be filed with the Department of Insurance on a form approved by the Department. The request for mediation shall state the reason for the request and the issues in dispute which are to be mediated. The Department of Insurance will appoint the mediator to conduct the mediation. Each party may once reject the mediator selected by the Department, either originally or after the opposing side has exercised its option to reject a mediator. Each party participating in the mediation must have the authority to make a binding decision. All parties must mediate in good faith.

The cost of the mediation, as set by the Department of Insurance, is shared equally by the parties. Costs incurred by a party in preparing for or attending the mediation are paid by the party incurring that cost.

## 10.  OTHER INSURANCE

If other insurance is obtained on *your* insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

## 11.  ACTION AGAINST US

Persons other than the *insured* covered by this policy, may not name us as a defendant prior to first obtaining a judgment against an *insured*.

## 12.  DIVIDEND PROVISION

*You* are entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

## 13.  DECLARATIONS

By accepting this policy, *you* agree that:

(a)  the statements in *your* application and in the declarations are *your* agreements and representations;

(b)  this policy is issued in reliance upon the truth of these representations; and

(c)  this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

## 14.  FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

1.  at the time application is made; or

2.  at any time during the policy period; or

3. in connection with the presentation or settlement of a claim.

### 15. EXAMINATION UNDER OATH

The *insured* or any other person seeking coverage under this policy must submit to examination under oath

by any person named by us when and as often as we may reasonably require.

### 16. TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Florida are amended to conform to those statutes.

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

1. SPECIAL ENDORSEMENT
   UNITED STATES GOVERNMENT EMPLOYEES

A. Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

   1. Motor vehicles owned or leased by the United States Government or any of its agencies, or
   2. Rented motor vehicle used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits describe in paragraph B. below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

B. The following limits apply to this coverage:

   1. A $100 deductible applies to each occurrence.
   2. For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

   a. The *actual cash value* of the property at the time of the occurrence; or
   b. The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
   c. Two months basic pay of the *insured*; or
   d. The limit of Property Damage liability coverage stated in the declarations.

3. For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:

   a. the *actual cash value* of the property at the time of the occurrence; or
   b. The cost to repair or replace the property, or any of it parts with other of like kind and quality; or
   c. The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

*R. A. Phillips*

R. A. Phillips
Secretary

*O. M. Nicely*

O. M. Nicely
President

GOVERNMENT EMPLOYEES INSURANCE COMPANY
GEICO CASUALTY COMPANY
GEICO GENERAL INSURANCE COMPANY
GEICO INDEMNITY COMPANY
HOME OFFICE - 5260 Western Avenue
Chevy Chase, Maryland 20815-3799

A-30FL (2-98) Page 17 of 17

# GEICO

## Automobile Policy Amendment

Policy Number:

### Glass Repair/Replacement

*Your* policy is amended as follows:

**SECTION III - Physical Damage Coverages**

**LIMIT OF LIABILITY**

The following numbered paragraph is added:

6.    for glass repair or replacement, is not to exceed the prevailing competitive price. This is the price we can secure from a competent glass repair facility conveniently located to *you* at the time *you* make *your* claim. Although *you* have the right to choose any glass repair facility or location, the limit of liability for *loss* to window glass is the cost to:

(a)  repair; or
(b)  replace

such glass but will not exceed the prevailing competitive price. If the glass is replaced, then the cost will be paid at the prevailing competitive price for replacement. At *your* request, we will identify a glass repair facility that will perform the repairs at the prevailing competitive price.

We affirm this amendment.

J. C. Stewart
Secretary        •        GOVERNMENT EMPLOYEES INSURANCE COMPANY        •
GEICO GENERAL INSURANCE COMPANY

O. M. Nicely
President

A-200-FL (12-02)

SPECIMEN

 **GEICO**

# Automobile Policy Amendment

## Florida

Policy Number:

*Your* policy is amended as follows:

SECTION II - PERSONAL INJURY PROTECTION AND AUTOMOBILE MEDICAL PAYMENTS

The title is changed to read:

SECTION II - PERSONAL INJURY PROTECTION

PART I - PERSONAL INJURY PROTECTION is changed to read:

PERSONAL INJURY PROTECTION (Includes Automobile Medical Payments coverage only if a premium amount is shown in the Policy Declarations for "Medical Payments" coverage)

PAYMENTS WE WILL MAKE

The first sentence is changed to read:

Under Personal Injury Protection, the Company will pay, in accordance with the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the injured person:

EXCLUSIONS

Exclusion (a) is changed to read:

(a) to *you* or any *relative* injured while *occupying* any *motor vehicle* owned by *you* and which is not an *insured motor vehicle* under this insurance;

Exclusion (d) is changed to read:

(d) to *you* or any dependent *relative* for *work loss* if an entry in the schedule or declarations indicates such coverage does not apply;

LIMIT OF LIABILITY; APPLICATION OF DEDUCTIBLE; OTHER INSURANCE

The last paragraph of this section is deleted.

CONDITIONS

Condition 3. is replaced entirely with the following:

3. Proof of Claim; Medical Reports and Examinations; Payment of Claim Withheld. As soon as practicable the person making the claim shall give to us written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist us in determining the amount due and payable. Such person shall submit to mental or physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. Such examinations shall be conducted within the municipality where the *insured* is receiving treatment, or in a location reasonably accessible to the *insured*, which, for purposes of this paragraph, means any location within the municipality in which the *insured* resides, or any location within 10 miles by road of the *insured's* residence, provided such location is within the county in which the *insured* resides. If the person unreasonably refuses to submit to an examination, we will not be liable for subsequent personal injury protection benefits. Whenever a person making a claim is charged with committing a felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

Condition 6., Arbitration, is deleted.

PART II - MODIFICATION OF POLICY COVERAGES is changed to read:

MODIFICATION OF POLICY COVERAGES

PART III - PROVISIONAL PREMIUM is changed to read:

PROVISIONAL PREMIUM

SECTION IV - UNINSURED MOTORISTS COVERAGE

DEFINITIONS

Under what the term *"uninsured auto"* does not include, subparagraph (b) is deleted.

SPECIMEN

## ADDITIONAL INSURED ENDORSEMENT

Named Insured and Address:

Effective Date of Endorsement:

Policy Number:

Policy Effective Date:
       (12:01 A.M. Standard Time)

Policy Expiration Date:
       (12:01 A.M. Standard Time)

This policy includes coverages for which limits are shown below.

Description of Car:

Description of Car:

Description of Car:

| COVERAGE | LIMITS OF COVERAGE | | |
|---|---|---|---|
| Bodily Injury Liability | $ M and $ M (each person) (each occurrence) | $ M and $ M (each person) (each occurrence) | $ M and $ M (each person) (each occurrence) |
| Property Damage Liability | $ (each occurrence) | $ (each occurrence) | $ (each occurrence) |
| Uninsured Motorist (Bodily Injury) | $ M and $ M (each person) (each occurrence) | $ M and $ M (each person) (each occurrence) | $ M and $ M (each person) (each occurrence) |
| Personal Injury Protection | $ | $ | $ |

## ADDITIONAL INSURED

These coverages also apply to the Additional Insured; but the limit of our liability is not increased by the inclusion of the Additional Insured.

We will give the Additional Insured written notice in the event of any:

1. Cancellation; or
2. Material change

in the liability coverages during the term of the policy.

Name and Address of Additional Insured:

_____

Countersigned by Authorized Representative

UE-30-A (3-91)

**SPECIMEN**

**GEICO**

# Family Automobile
# Policy Amendment

Policy Number:

*Your* policy provisions are amended as follows:

SECTION III

PHYSICAL DAMAGE COVERAGES

Emergency Road Service

*You* have this coverage if "Emergency Road Service" appears in the "Coverages" space on the declarations page.

We will pay the fair cost *you* incur for the *owned* or *non-owned auto* for:

1. mechanical labor up to one hour at the place of breakdown;
2. lockout services up to $100 per lockout if keys to the auto are lost, broken or accidentally locked in the auto;

## Emergency Road Service
## Coverage

3. if it will not run, towing to the nearest repair facility where the necessary repairs can be made;
4. towing it out if it is stuck on or immediately next to a public highway;
5. delivery of gas, oil, loaned battery, or change of tire. WE DO NOT PAY FOR THE COST OF THE GAS, OIL, LOANED BATTERY, OR TIRE(S).

There will be a limit of one reimbursement per disablement.

We affirm this amendment.

J. C. Stewart
Secretary

O. M. Nicely
President

A-115 (02-02)

SPECIMEN

## Uninsured Motorist Coverage (Non-Stacked)
## (Florida)

Policy Number:

In consideration of the payment of premium for this coverage, and subject to all the terms of the policy, we agree with *you* as follows:

Section IV, LIMIT OF LIABILITY, is amended by adding the following paragraphs:

5.  When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations.

6.  If at the time of the accident the injured person is *occupying* an auto insured by us, the amount of coverage available to the injured person is the limit specified in the declarations for the *occupied* auto.

7.  If at the time of the accident the injured person is not *occupying* a motor vehicle, the injured person is entitled to select any one limit of any one auto insured under this coverage.

8.  If at the time of the accident the injured person is *occupying* a motor vehicle which is not owned by him or by a family member residing with him, he is entitled to the highest limits of uninsured motorist coverage afforded for any one vehicle as to which he is the named insured or insured family member. Such coverage shall be excess over the coverage on the vehicle he is *occupying*.

If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of liability for a loss.

THE COMPANY affirms this endorsement.

J. C. Stewart
Secretary    •    GOVERNMENT EMPLOYEES INSURANCE COMPANY
GEICO GENERAL INSURANCE COMPANY

O. M. Nicely
•    President

A-239 (7-88)

SPECIMEN



Policy Number:

# Additional Personal Injury Protection Amendment

## Florida

In consideration of premium paid, we agree that the Personal Injury Protection Section of *your* policy is amended to provide Additional Personal Injury Protection. Additional Personal Injury Protection is subject to all the terms and conditions of *your* policy that apply to Personal Injury Protection, except as specifically altered by this amendment.

### PAYMENTS WE WILL MAKE

(a) and (b) of the coverage grant (PAYMENTS WE WILL MAKE) in PART I of the Personal Injury Protection Section of *your* policy are changed to read as follows:

    (a)  100% of *medical expenses*, and

    (b)  85% of *work loss;*

### LIMIT OF LIABILITY

We will pay Additional Personal Injury Protection benefits only after the limits of the basic Florida Personal Injury Protection benefits that are available from any source have been exhausted. Also, we will not pay any benefits for *bodily injury* which the *insured* or anyone else is required to pay because of any elected basic Personal Injury Protection deductible or other payment limitation, or the portion of any loss the *insured* must share under any provision of any basic Florida Personal Injury Protection Coverage.

WE affirm this amendment.

J. C. Stewart
Secretary

O. M. Nicely
President

• GOVERNMENT EMPLOYEES INSURANCE COMPANY •
GEICO GENERAL INSURANCE COMPANY

**SPECIMEN**

# AUTOMOBILE POLICY AMENDMENT

## RENTAL REIMBURSEMENT AMENDMENT

Policy Number:

"We agree with *you* that the policy is amended as follows:"

SECTION III - Physical Damage Coverages

The following coverage is added:

Coverage - Rental Reimbursement

When there is a *loss* to an *owned auto* for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the *insured* toward costs the *insured* incurs to rent an auto. Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the *owned auto* . This coverage applies only if:

1. the *owned auto* is withdrawn from use for more than 24 consecutive hours, and

2. the *loss* to the *owned auto* is covered under comprehensive or collision coverage of this policy.

This coverage does not apply when there is a total theft of the entire auto unless and until:

1. the period of time reasonably required to repair or replace the stolen auto exceeds 30 days; and

2. only if the additional benefits provided under the supplementary benefits of the policy have been exhausted.

No deductible applies to this coverage.

The coverage provided by this amendment is subject to all the provisions and conditions of SECTION III of the policy.

THE COMPANY affirms this amendment.


J. C. Stewart
Secretary

O. M. Nicely
President

A-431 (04-02)

SPECIMEN

## AUTOMOBILES HIRED UNDER LONG TERM CONTRACT

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number:

Effective Date:

We agree with **you** that:

1.  The auto described below is deemed to be owned by **you** while leased by **you**.

2.  The liability section of the policy covers the owner or lessee but only as a person or organization legally responsible for the use of that auto by a person who is an **insured** under the policy with respect to that auto.

Description of Auto:

This endorsement forms a part of **your** policy. It is effective at 12:01 A.M. local time at **your** address on the effective date shown above.

_____

Countersigned by Authorized Representative

UE-5 (M-84)

**SPECIMEN**

# EXHIBIT "B"

KENNETH N. METNICK*
 Board Certified Civil Trial Attorney
MATTHEW D. LEVY **
 Board Certified Civil Trial Attorney
MICHAEL J. LONG **
MICHAEL K. GRIFE **

*MEMBER FLA & NY BAR
**MEMBER FLA BAR ONLY

A LAW OFFICE OF

# METNICK, LEVY & LONG

PALM COURT PLAZA & PROFESSIONAL CENTER
5150 LINTON BLVD • SUITE 320
DELRAY BEACH, FLA. 33484
**(561) 498-9979**



FACSIMILE: (561) 498-9987
http://www.metnickandlevy.com

J377

*TREATED AS DEMAND*

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
September 8, 2006

*Jason Smith*

Geico
Post Office Box 33040
Lakeland, Florida 33807-3040

*0297308390/0/011* ✓

Attention: Mr. Michael Myers/Claims Department

Re: Our Client        :    Andrea Patterson
    Your Insured      :    Joel & Marlene Patterson
    Policy Number     :    4061-33-13-61
    Date of Accident  :    June 6, 2006

Dear Mr. Myers:

As you know, this office represents Andrea Patterson for the above-referenced automobile accident. Enclosed please find medical records and bills on our client for the above accident.

We are entitled to collect past and future economic damages for medical bills. We, of course, are also entitled to recover money for pain and suffering and any applicable lost wages or future earning capacity claim.

In light of the above, we have an offer from State Farm Insurance Company for the $25,000.00 bodily injury policy limits on the above accident. Pursuant to Florida Statute 627.727(6) (a) (b), we request of Geico (as the underinsured motorist carrier) to give us permission, within thirty days, to accept their offer and that you will waive subrogation.

We are also requesting you tender your Underinsured Motorist limit. Ms. Patterson sustained serious and permanent personal injuries, which include: Severe closed blunt head injury, Traumatic brain injury, prolonged loss of consciousness, Basilar skull fracture, R temporal bone, R sphenoid, L mastoid, R lateral orbital wall, R temporal epidural hematoma, R radial fracture, R fractured radius, R fractured radial head, R shoulder-clavicular shaft fracture, this list just highlights the obvious injuries. The first of many more surgeries, was *'open reduction and internal fixation of the right radial shaft fracture and radial head fracture'*. She was admitted to Delray Medical Center on June 6, and was discharged on June 24, 2006.

Ms. Patterson's future treatment is just as extensive. She experiences 'life blackouts', whereas she still thinks she is New York, does not even remember moving to Florida with her family. She has still not had a menstrual cycle since this accident. She has tremendous guilt over the death of her friend. Ms. Patterson recently underwent 'shaving' of her clavicle, because the bone is so extruded it would have pierced the skin if left untreated. We are awaiting documentation as to the records and the bills. She still needs a series of surgeries and psychological rehabilitation. The medical bills are already in the significant six figures. Enclosed is our demand for your review. Failure to respond with regard to this policy limits demand within 30 days, will result in our filing a Civil Remedies Notice.

Thank you for your prompt and courteous attention to this matter..

Very truly yours,

KENNETH N. METNICK, ESQ.
KNM/nmh
Enclosures

# EXHIBIT "C"

**GEICO** ■
- Government Employees Insurance Company
- GEICO General Insurance Company
- GEICO Indemnity Company
- GEICO Casualty Company

P.O. Box 33040  ■  Lakeland, FL  33807-3040

September 18, 2006

VIA CERTIFIED AND REGULAR MAIL

Andrea Patterson
3958 W. Sandpiper Drive
Boynton Beach, FL 33436

| | |
|---|---|
| Claim No.: | 0297308390101011 |
| Insured: | Andrea Patterson |
| Loss Date: | 06/06/2006 |

Dear Ms. Patterson

This will acknowledge receipt of an accident report dated August 6, 2006, in regards to an accident involving a 2001 Nissan, VIN 1N4DL01D51C22081, in which Andrea Patterson was the driver.  The loss occurred on June 6, 2006, on PGA Boulevard in/near Palm Beach Gardens. You are hereby notified that GEICO Insurance Company, in investigating the said accident or any claim arising there from, or in negotiating for compromise settlement, or in making any settlement, or in any way acting or failing to act, does not waive any of its rights or admit any obligations under the policy.

We are making this reservation of rights because the vehicle involved in this accident is not a listed vehicle on the policy nor is the driver a listed driver on the policy.  Furthermore, the driver does not appear to be a resident relative of our insured.

## SECTION I- LIABILITY COVERAGES DEFINITIONS
***"Owned auto" means***:

- (a) Vehicle described in this policy for which a premium charge is shown for these coverages;
- (b) A ***trailer*** owned by ***you***;
- (c) A ***private passenger, farm*** or ***utility auto***, ownership of which ***you*** acquire during the policy period, if,
  - (i) it replaces an ***owned auto*** as defined in (a) above; or
    - (ii) we insure all ***private passenger, farm*** or ***utility autos*** owned by ***you*** on the date of the acquisition, and ***you*** ask us to add to the policy no more than 30 days later.
- (d) a ***temporary substitute auto.***



■ Government Employees Insurance Company
■ GEICO General Insurance Company
■ GEICO Indemnity Company
■ GEICO Casualty Company

P.O. Box 33040 ■ Lakeland, FL 33807-3040

*"Temporary substitute auto"* means: A *private passenger*, *farm* or *utility auto* or *trailer* not owned by you, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the owned auto or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction

*"Non-owned auto"* means a *private passenger*, *farm* or *utility auto* or *trailer* not owned by Or furnished for the regular use of either *you* or a relative, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered a furnished for regular use.

*"Relative"* means a person related to *you* who resides in *your* household, including *your* ward or foster child.

*"You"* means the policyholder named in the declarations and his or her spouse if a resident of the same household.

PERSONS INSURED

Section I applies to the following with regard to a *non-owned auto:*

1. *you* and *your relatives* when driving the *non-owned auto*. Such use must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission.

2. a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.

   The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## SECTION II - PERSONAL INJURY PROTECTION COVERAGE AND AUTOMOBILE MEDICAL PAYMENTS

### EXCLUSIONS

(f)  to any person, other than **you,** if such person is the **owner** of a **motor vehicle** with respect to which security is required under the florida Motor Vehicle No-Fault law, as amended;

SECTION III – PHYSICAL DAMAGE COVERAGES

*"Owned auto "means*:

**GEICO** ■
- Government Employees Insurance Company
- GEICO General Insurance Company
- GEICO Indemnity Company
- GEICO Casualty Company

P.O. Box 33040 ■ Lakeland, FL 33807-3040

(a) Vehicle described in this policy for which a premium charge is shown for these coverages;

(b) A *trailer* owned by *you*;

(c) A *private passenger, farm* or *utility auto*, ownership of which *you* acquire during the policy period, if,

    (i) it replaces an *owned auto* as defined in (a) above; or

        (ii) we insure all *private passenger, farm* or *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add to the policy no more than 30 days later.

(d) a *temporary substitute auto.*

*"Temporary substitute auto"* means: A *private passenger, farm* or *utility auto* or *trailer* not owned by you, temporarily used with the permission of the owner.  This vehicle must be used as a substitute for the owned auto or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction

*"Non-owned auto"* means a *private passenger, farm* or *utility auto* or *trailer* not owned by Or furnished for the regular use of either *you* or a relative, other than a *temporary substitute auto.* An auto rented or leased for more than 30 days will be considered a furnished for regular use.

*"Relative"* means a person related to *you* who resides in *your* household, including *your* ward or foster child.

*"You"* means the policyholder named in the declarations and his or her spouse if a resident  of   the same household.

PERSONS INSURED

Section 3 applies to the following with regard to a *non-owned auto:*

3. *you* and *your relatives* when driving the *non-owned auto.* Such use must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission.

4. a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.

    The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

SECTION IV- UNINSURED MOTORISTS COVERAGE

**GEICO** ■
■  Government Employees Insurance Company
■  GEICO General Insurance Company
■  GEICO Indemnity Company
■  GEICO Casualty Company

P.O. Box 33040  ■  Lakeland, FL  33807-3040

2. **"Insured"** means:

        (a)     the individual named in he declarations and his or her spouse if a resident of the same household.

   (b)   **relatives** of (a) above if residents of his household;

   (c)   any other person while **occupying** an **insured auto;**

   (d)   any person who is entitled to recover damages because of **bodily injury** Sustained by an **insured** under (a), (b), and (c) above.

3. **"Insured auto"** means:

   (a) described in the declarations and covered by the Bodily Injury Liabilty coverage of this policy;

   (b) temporarily substituted for an **insured auto** when withdrawn from normal use because of its breakdown, preair, servicing, loss or destruction;

   (c) operated by **you** or **your** spouse if a resident of the same household.

It is understood that the acknowledgement of this notice shall not be construed a waiver of your rights under the policy.

If you have any questions or need to contact me please do so at the number listed below.

Sincerely,

Michael Myers
CU Claims Examiner J377
800-648-2493 Extension 4376

cc:  Metnick

# EXHIBIT "D"



**GEICO**

■ Government Employees Insurance Company
■ GEICO General Insurance Company
■ GEICO Indemnity Company
■ GEICO Casualty Company

P.O. Box 33040  ■  Lakeland, FL  33807-3040

September 18, 2006

VIA CERTIFIED AND REGULAR MAIL

Joel and Marlene Patterson
13675 Cambria Bay Lane
Delray Beach, FL 33446-5661

Claim No.:    0297308390101011
Insured:      Andrea Patterson
Loss Date:    06/06/2006

Dear Joel and Marlen Patterson,

This will acknowledge receipt of an accident report dated August 6, 2006, in regards to an accident involving a 2001 Nissan, VIN 1N4DL01D51C22081, in which Andrea Patterson was the driver. The loss occurred on June 6, 2006, on PGA Boulevard in/near Palm Beach Gardens. You are hereby notified that GEICO Insurance Company, in investigating the said accident or any claim arising there from, or in negotiating for compromise settlement, or in making any settlement, or in any way acting or failing to act, does not waive any of its rights or admit any obligations under the policy.

We are making this reservation of rights because the vehicle involved in this accident is not a listed vehicle on the policy nor is the driver a listed driver on the policy. Furthermore, the driver does not appear to be a resident relative of our insured.

## SECTION I- LIABILITY COVERAGES DEFINITIONS

***"Owned auto" means***:

(a)   Vehicle described in this policy for which a premium charge is shown for these coverages;

(b)   A *trailer* owned by *you*;

(c)   A *private passenger, farm* or *utility auto*, ownership of which *you* acquire during the policy period, if,

    (i)   it replaces an *owned auto* as defined in (a) above; or

        (ii)   we insure all *private passenger, farm* or *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add to the policy no more than 30 days later.

(d)   a *temporary substitute auto*.



■ Government Employees Insurance Company
■ GEICO General Insurance Company
■ GEICO Indemnity Company
■ GEICO Casualty Company

P.O. Box 33040 ■ Lakeland, FL 33807-3040

*"Temporary substitute auto"* means: A *private passenger, farm* or *utility auto* or *trailer* not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the owned auto or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction

*"Non-owned auto"* means a *private passenger, farm* or *utility auto* or *trailer* not owned by Or furnished for the regular use of either *you* or a relative, other than a *temporary substitute auto.* An auto rented or leased for more than 30 days will be considered a furnished for regular use.

*"Relative"* means a person related to *you* who resides in *your* household, including *your* ward or foster child.

*"You"* means the policyholder named in the declarations and his or her spouse if a resident of the same household.

## PERSONS INSURED

Section I applies to the following with regard to a *non-owned auto:*

1. *you* and *your relatives* when driving the *non-owned auto.* Such use must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission.

2. a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.

   The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## SECTION II - PERSONAL INJURY PROTECTION COVERAGE AND AUTOMOBILE MEDICAL PAYMENTS

### EXCLUSIONS

(f) to any person, other than *you,* if such person is the **owner** of a **motor vehicle** with respect to which security is required under the florida Motor Vehicle No-Fault law, as amended;

## SECTION III – PHYSICAL DAMAGE COVERAGES

*"Owned auto "means*:

**GEICO** ■
■ Government Employees Insurance Company
■ GEICO General Insurance Company
■ GEICO Indemnity Company
■ GEICO Casualty Company

P.O. Box 33040 ■ Lakeland, FL 33807-3040

(a)   Vehicle described in this policy for which a premium charge is shown for these coverages;

(b)   A *trailer* owned by *you*;

(c)   A *private passenger, farm* or *utility auto*, ownership of which *you* acquire during the policy period, if,

　　(i)   it replaces an *owned auto* as defined in (a) above; or

　　　(ii)   we insure all *private passenger, farm* or *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add to the policy no more than 30 days later.

(d)   a *temporary substitute auto.*

*"Temporary substitute auto"* means: A *private passenger, farm* or *utility auto* or *trailer* not owned by you, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the owned auto or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction

*"Non-owned auto"* means a *private passenger, farm* or *utility auto* or *trailer* not owned by Or furnished for the regular use of either *you* or a relative, other than a *temporary substitute auto.* An auto rented or leased for more than 30 days will be considered a furnished for regular use.

*"Relative"* means a person related to *you* who resides in *your* household, including *your* ward or foster child.

*"You"* means the policyholder named in the declarations and his or her spouse if a resident of the same household.

### PERSONS INSURED

Section 3 applies to the following with regard to a *non-owned auto:*

3.   *you* and *your relatives* when driving the *non-owned auto.* Such use must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission.

4.   a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

### SECTION IV- UNINSURED MOTORISTS COVERAGE



■ Government Employees Insurance Company
■ GEICO General Insurance Company
■ GEICO Indemnity Company
■ GEICO Casualty Company

P.O. Box 33040 ■ Lakeland, FL 33807-3040

2. **"Insured"** means:

        (a)     the individual named in he declarations and his or her spouse if a resident of the same household.

  (b)    **relatives** of (a) above if residents of his household;

  (c)    any other person while **occupying** an **insured auto;**

  (d)    any person who is entitled to recover damages because of **bodily injury** Sustained by an **insured** under (a), (b), and (c) above.

3. **"Insured auto"** means:

  (a) described in the declarations and covered by the Bodily Injury Liabilty coverage of this policy;

  (b) temporarily substituted for an **insured auto** when withdrawn from normal use because of its breakdown, preair, servicing, loss or destruction;

  (c) operated by **you** or **your** spouse if a resident of the same household.

It is understood that the acknowledgement of this notice shall not be construed a waiver of your rights under the policy.

If you have any questions or need to contact me please do so at the number listed below.

Sincerely,

Michael Myers
CU Claims Examiner J377
800-648-2493 Extension 4376

# EXHIBIT "E"

KENNETH N. METNICK*
   Board Certified Civil Trial Attorney
MATTHEW D. LEVY **
   Board Certified Civil Trial Attorney
MICHAEL J. LONG **
MICHAEL K. GRIFE **

*MEMBER FLA & NY BAR
**MEMBER FLA BAR ONLY

A LAW OFFICE OF

# METNICK, LEVY & LONG

PALM COURT PLAZA & PROFESSIONAL CENTER
5150 LINTON BLVD • SUITE 320
DELRAY BEACH, FLA. 33484
(561) 498-9979



FACSIMILE: (561) 498-9987
http://www.metnickandlevy.com

CERTIFIED & RETURN
RECEIPT REQUESTED

September 26, 2006

Geico
P.O. Box 33040
Lakeland, FL 33807-3040
Attn: Mr. Michael Myers/CU Claims Examiner

      RE:   Our client/Your Insured    :Andrea Patterson
              Policyholder             :Joel & Marlene Patterson
              Date of Loss           :June 6, 2006
              Claim Number        :0297308390101011

Dear Mr. Myers:

     Andrea Patterson is a dual resident. She had her own car, and her own insurance policy with Bristol West, but did not have Uninsured Motorists coverage. She did not use her parent's car.

     The Geico policy covers resident relatives. Andrea Patterson is a relative, their daughter. She also is a resident of her parent's household. A person can have multiple residences. This is black letter law. You maybe confusing residence with domicile.

     The policy exclusion claimed by Geico is vague and/or ambiguous and must be interpreted in favor of insurance coverage. In *Flores v. Allstate Ins. Co.*, **819 So.2d 740 (Fla.2002)**, the Supreme Court stated that the purpose of the UM/UIM statute is to protect insureds, and the policy language must be construed liberally in favor of finding coverage. If a provision is subject to more than one interpretation (e.g., one interpretation providing coverage and another interpretation limiting coverage), then the provision is, by definition, ambiguous, and must be interpreted in favor of finding coverage. Exclusion clauses must be interpreted even more strictly against the carrier in favor of finding coverage. The term residency has been found to be ambiguous. *Progressive Ins. Co. V. Estate of Wesley*, **702 So.2d 513 (Fla. 2nd DCA 1997)**. The Wesley case also discusses the concept of multiple residences. If there is any ambiguity, certainly the case law supports a directed verdict in favor of the Plaintiff. In your reservation of rights, you make reference of Sections I, II, III of the policy - Uninsured Motorist coverage is covered in Section IV. Section IV No.2a. says relatives of insured are covered if they are residents of the household.

Any other alleged Geico policy exclusions must fail because the Florida Supreme Court has already struck down the same exclusion in a past case based on the same facts, because it is against the avowed public policy of the State of Florida. In *Lee v. State Farm*, **339 So.2d 670 (Fla. 1976)**, the Florida Supreme Court confronted a set of facts and arguments identical to those faced by the court in the present case. Rather, the car the brothers were in was insured through a separate policy. The facts are in line to the present case, where ANDREA PATTERSON was in her vehicle, a Nissan Altima, which was insured under a separate policy with Bristol West Insurance Company. In *Lee*, the Supreme Court was faced with the same State Farm policy exclusion. In *Lee*, both brothers were deemed to be residents of the household of their father, who made a claim for UM benefits similar to ANDREA PATTERSON, except that case involved a wrongful death. The court in *Lee* ruled that the policy exclusion claimed by State Farm was violative of Florida public policy, and the exclusion was deemed invalid. Certiorari was then denied in *State Farm v. Lee*, **348 So.2d 954 (Fla. 19977)**. The *Lee* Court's reasoning was later followed by the 5th DCA in *Curtin v. State Farm*, **449 So.2d 293 (Fla. 5th DCA 1984)**, and the Supreme Court later affirmed that decision. *State Farm v. Curtain*, **496 So.2d 815 (Fla. 1986)**. The reasoning behind the Court's holding in *Lee* emanates from the seminal Florida Supreme case of *Mullis v. State Farm*, **252 So.2d 229 (Fla. 1971)**, which confirms that ANDREA PATTERSON is a Class I insured under JOEL & MARLENE PATTERSON'S policy with GEICO.

Every appellate court has affirmed *Lee v. State Farm* and it is still controlling law to this day, where a claim is made for UM under its policy, the vehicle in the accident is insured by another policy and owned by a different person than the owner of the vehicle in the policy that a claim is being made under. The bottom line is, there is coverage and any family exclusion is invalid. I have already won a directed verdict on this issue in another case. I also recently won a summary judgement on this issue.

Failure to tender policy limits will be deemed bad faith. There was no misrepresentation under the policy because Andrea had her own vehicle, and one of the Patterson cars was not involved in the accident. Additionally, Andrea did not use her parent's car which further substantiates the fact the there was no misrepresentation. Enclosed is the Civil Remedy Notice.

*On another note, we represent Andrea Patterson, her parents Joel & Marlene Patterson. We ask you again, do no contact them.*

We have an offer from State Farm Insurance Company for the bodily injury policy limits on the above accident. Pursuant to Florida Statute 627.727(6) (a) (b), we request of Geico (as the uninsured/underinsured motorist carrier) to give us permission, within thirty days, to accept their offer and that you will waive subrogation.

Thank you for your prompt and courteous attention to this matter.)

Very truly yours,

KENNETH N. METNICK, ESQUIRE
KNM/nmh
Enclosure
cc: Florida Department of Financial Services
    Consumer Assistance/Civil Remedy Section
  Mr. & Mrs. Joel & Marlene Patterson

FLORIDA
DEPARTMENT OF
FINANCIAL SERVICES
DIVISION OF CONSUMER SERVICES — CONSUMER ASSISTANCE

RECEIVED
LAKELAND

OCT 0 9 2006

J377 Walsh

DFS FILE #:

**UNREADABLE ORIGINAL**

## CIVIL REMEDY NOTICE OF INSURER VIOLATION
### INSTRUCTION FOR COMPLETING THIS FORM ON REVERSE SIDE

| Date Submitted: 9·26·2006 | | INS.CO. FEIN: 75·1598101 |
|---|---|---|
| **1. Company:** | GEICO GENERAL INSURANCE COMPANY | |
| Street Address: | 1 GEICO PLAZA | |
| City/State/Zip: | WASHINGTON, DC 20076-0001 | |
| Individual(s) Involved: | MICHAEL MYERS - CU CLAIMS EXAMINER J377 - LAKELAND | |

**This notice is given for the purpose of perfecting the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.**

☑ Insured   ☐ Third Party   ☐ Other

**2. Complainant:**

| Insured Name: JOEL + MARLENE PATTERSON | Policy No: 4061-33-13-61 |
|---|---|
| Complainant Name: ANDREA PATTERSON | Claim No: 0297308390101011 |

Attorney (if any): KENNETH N. METNICK / METNICK, LEVY + LONG

Street Address: 5150 LINTON BOULEVARD Suite 320

| City/State/Zip/City: DELRAY BEACH | FL | 33484 | PALM BEACH |
|---|---|---|---|

**3. TYPE OF INSURANCE:**

☐ Accident & Health   ☐ Life & Annuity   ☐ Residential Property & Casualty
☐ Medicare Supplement   ☑ Auto   ☐ Commercial Property & Casualty
☐ Miscellaneous

**4. REASON FOR NOTICE:**

☐ Cancellation/Non-renew   ☑ Claim Denial   ☐ Unsatisfactory Settlement Offer
☐ Claim Delay   ☐ Unfair Trade Practice ☐ Other

**5. PURSUANT TO SECTION 624.155, F.S.** please provide the statutory provision, including the specific language of the statute, which the insurer allegedly violated.

List Statute numbers: 624.155

Statute Language: NOT ATTEMPTING in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly towards its insured and with due regard for her or his interests.

**6.** Briefly reference the specific policy language that is relevant to the violation, if any. If the person brining the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**7.** Briefly describe the facts and circumstances giving rise to the violation. ANDREA PATTERSON DRIVER OF VEHICLE. STRUCK BY UNINSURED MOTORIST. PASSENGER OF PATTERSON VEHICLE, DIED AT SCENE. MS. PATTERSON WAS IN AND OUT OF CONSCIOUSNESS. SUSTAINED BRAIN BLEED INJURIES, FRACTURED CLAVICLE, FACIAL FRACTURES, 2 BROKEN BONES AT ELBOW, OPEN REDUCTION SURGERY, EMOTIONAL AND PHYSICAL DAMAGES, FUTURE SURGICAL NEEDS AND THERAPY—BOTH PHYSICAL AND EMOTIONAL BEHAVIORS.

DFS-I0-363
Rev. 9/2005

 OCT 16 2006

# EXHIBIT "F"

**GEICO** :
■  Government Employees Insurance Company
■  GEICO General Insurance Company
■  GEICO Indemnity Company
■  GEICO Casualty Company

P.O. Box 33040  ■  Lakeland, FL  33807-3040

September 26, 2006

Andrea Patterson                                      VIA CERTIFIED &
3858 W Sandpiper Drive, APT 9                              REGULAR MAIL
Boynton Beach, FL 33436

Claim No.:        0297308390101011
Insured:          Andrea Patterson
Loss Date:        06/06/2006

Dear Andrea Patterson:

With respect to the automobile accident occurring on June 6, 2006, wherein you were driving a
2001 Nissan 1N4DL01D51C220881, the GEICO Insurance Company hereby denies any and all
liability and obligation to you and to others under the policy number 4061331361, issued to Joel and
Marlene Patterson.

This denial is made because 1) Andrea Patterson is not a resident relative of our named insureds,
Joel and Marlene Patterson, 2) the vehicle is not owned by Joel and/or Marlene Patterson, and 3) the
vehicle is not listed on this policy.  Furthermore, it appears that Ms. Patterson was the at-fault party
in the loss, and she has insurance through Security National, policy number 2400G001186285.

The GEICO Insurance Company will take no further action with respect to any claim, which you
might have against us or with respect to any claim or suit against you, which has arisen, or may
arise, out of the said accident and hereby withdraws from the matter entirely.

Sincerely,

Michael Myers
CU Claims Examiner J377
800-648-2493 ext 4376

cc:      Joel and Marlene Patterson
         Kenneth Metnick

# EXHIBIT "G"

KENNETH N. METNICK*
   Board Certified Civil Trial Attorney
MATTHEW D. LEVY **
   Board Certified Civil Trial Attorney
MICHAEL J. LONG **
MICHAEL K. GRIFE **
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
*MEMBER FLA & NY BAR
**MEMBER FLA BAR ONLY

A LAW OFFICE OF

# METNICK, LEVY & LONG

PALM COURT PLAZA & PROFESSIONAL CENTER
5150 LINTON BLVD • SUITE 320
DELRAY BEACH, FLA. 33484
(561) 498-9979



FACSIMILE: (561) 498-9987
http://www.metnickandlevy.com

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
October 10, 2006

Geico
P.O. Box 33040
Lakeland, FL 33807-3040
Attn: Mr. Michael Myers/CU Claims Examiner

    RE:    Our client/Your Insured    :Andrea Patterson
               Policyholder             :Joel & Marlene Patterson
               Date of Loss            :June 6, 2006
               Claim Number         :0297308390101011

Dear Mr. Myers,

We have still not received a full copy of your policy. I am responding to your recent phone call and alleged policy exclusions on the assumption that your Geico policy is the same as other Florida Geico policies we have in our office. I have addressed the residency issue in my previous letter and I am enclosing the case *Progressive Ins. Co. v. Estate of Wesley*, 702 So.2d 513 (Fla. 2nd DCA 1997). Concerning your other attempted exclusions, I am enclosing a memo of law prepared in a recent case against State Farm, and Judge Thomas H. Barkdull III's order, granting our Summary Judgment . I am also enclosing the cases, *Lee v. State Farm*, 339 So.2d 670 (Fla. 1976), and *Mullis v. State Farm*, 252 So.2d 229 (Fla. 1971).

As we discussed on the phone, the Lee case outlines the rule of law, that family exclusions are not going to apply in cases involving two cars owned by different people, and two insurance policies like the Patterson case. The analysis has been approved by the Florida Supreme Court and every appellate court as outlined in the memo of law. Additionally, the Mullis case outlines the rule of law that Andrea Patterson, a relative and resident of the Patterson household is a Class I insured. The Mullis case, the Lee case and its progeny will not allow a denial of coverage of policy.

Andrea Patterson is an insured pursuant to being a resident of the household. Any exclusions based on regular use or any other family exclusions will be barred by public policy black letter law. Additionally, from a common sense point of view, it cannot be reasonably argued that the intention of the Geico policy was to disallow coverage for an insured if they are injured while occupying a motor vehicle not

specifically mentioned in the policy. This is standard UM coverage.

Additionally, one cannot possibly claim collusion in this case, which is the underlying premise for allowing family exclusions in cases unlike this one.

Also, last year I prevailed on a motion for directed verdict at trial before another judge on a case involving an exclusion based on the same argument you are utilizing. In that case the insurance company defendant alleged that a vehicle was not covered under the uninsured motorist policy because of an argument on whether or not it was covered under the liability part of the policy. Recently, an insurance company defendant agreed to allow the entry of a Summary Judgement against them on the same aforementioned argument because of the Lee case. If you need further documentation I will provide it when the order is signed.

I want to point out that the Lee case involves a brother causing the death of another brother. Both of the brother's lived with their father in the same household. In our case, Andrea Patterson is a resident and there is no involvement from another insured causing her death. Also, arguably the attempted exclusion is not a family exclusion and I wouldn't ever have to argue the Lee case. The Mullis case would control since Andrea Patterson is a Class I insured. Remember the Lee case is only a necessary argument if there is a family exclusion. Family exclusions are allowed on a limited basis in cases involving insured's relatives, with only one policy, one automobile, one owner, and one residence for the named insured's and their relatives. If the exclusion you argue is not a family exclusion, then it would be invalid under any factual circumstance with regard to Andrea Patterson and her parents, because they are Class I insured's pursuant to the Mullis case.

Again, if it is a family exclusion argument, then there are two cars, Andrea's and her parents. Two owners, Andrea and her parents. Two policies, Geico and Andrea's policy with Bristol West, which does not afford UM coverage. The Lee case is the controlling authority on public policy grounds. Therefore, your alleged exclusions are invalid.

Very truly yours,

KENNETH N. METNICK, ESQ.
KNM/nmh
Enclosures

# EXHIBIT "H"

01/11/2007 14:53 FAX  3056707065                                                        002/017

JAN-11-2007  13:35        GEICO 2959                          853 646 9727    P.002

KENNETH N. METNICK*
   Board Certified Civil Trial Attorney
MATTHEW D. LEVY *=
   Board Certified Civil Trial Attorney
MICHAEL J. LONG *=
MICHAEL K. GRIFE *=

MEMBER FLA & NY BAR
MEMBER FLA BAR ONLY

```
            A LAW OFFICE OF
    METNICK, LEVY & LONG
PALM COURT PLAZA & PROFESSIONAL CENTER
       5150 LINTON BLVD • SUITE 320
          DELRAY BEACH, FLA. 33484
            (561) 498-9979

        FACSIMILE: (561) 498-9987
        http://www.metnickandlevy.com
```



J377

John
Walsh

December 22, 2006

Geico
P.O. Box 33040
Lakeland, FL 33807-3040
Attn: Mr. John Walsh, CU Claims Manager
Attn: Mr. Michael Myers, CU Claims Examiner

**TREATED AS DEMAND**

RE:    Our client/Your Insured      :Andrea Patterson
       Policyholder                 :Joel & Marlene Patterson
       Date of Loss                 :June 6, 2006
       Claim Number                 :0297308390101011 ✓

Dear Mr. Walsh & Mr. Myers,

Please provide proof that Geico has complied with Florida Statute 627.727 (a) which provides : any insurer who provides coverage which includes the limitations in this subsection shall file revised premium rates with the office for such uninsured motorist coverage to take effect prior to initially providing such coverage. The revised rates shall reflect a reduction of at least twenty (20%) percent.

Additionally, under the financial responsibility law Florida Statute section 825.102 (3), Joel and Marlene Patterson are entitled to $250,000.00, your policy limits for Andrea's injuries, for her medical bills, past and future. You have 30-days to tender your policy limits or bad faith.

Very truly yours,

**METNICK, LEVY & LONG, P.A.**
KENNETH N. METNICK, ESQ.
KNM/nmh

01/11/2007 14:53 FAX  3056707065                                                    ☑003/017

JAN-11-2007  13:35        GEICO 2959                             863 646 9727   P.009

                                                                                    PC

KENNETH N. METNICK**
    Board Certified Civil Trial Attorney
MATTHEW D. LEVY **
    Board Certified Civil Trial Attorney
MICHAEL J. LONG **
MICHAEL K. GRIFE **
*MEMBER FLA & NY BAR
**MEMBER FLA BAR ONLY

        A LAW OFFICE OF
METNICK, LEVY & LONG
PALM COURT PLAZA & PROFESSIONAL CENTER
   5150 LINTON BLVD · SUITE 320
      DELRAY BEACH, FLA. 32484
         (561) 498-9979

      FACSIMILE: (561) 498-9987
      http://www.metnickandlevy.com



J377

John
Walsh

December 22, 2006

Geico
P.O. Box 33040
Lakeland, FL 33807-3040
Attn: Mr. John Walsh, CU Claims Manager
Attn: Mr. Michael Myers, CU Claims Examiner

TREATED AS DEMAND

RE:   Our client/Your Insured      :Andrea Patterson
      Policyholder                 :Joel & Marlene Patterson
      Date of Loss                 :June 6, 2006
      Claim Number                 :0297308390101011 ✓

Dear Mr. Walsh & Mr. Myers,

Please provide proof that Geico has complied with Florida Statute 627.727 (a) which provides : any insurer who provides coverage which includes the limitations in this subsection shall file revised premium rates with the office for such uninsured motorist coverage to take effect prior to initially providing such coverage. The revised rates shall reflect a reduction of at least twenty (20%) percent.

Additionally, under the financial responsibility law Florida Statute section 825.102 (3), Joel and Marlene Patterson are entitled to $250,000.00, your policy limits for Andrea's injuries, for her medical bills, past and future. You have 30-days to tender your policy limits or bad faith.

Very truly yours,

METNICK, LEVY & LONG, P.A.
KENNETH N. METNICK, ESQ.
KNM/nmh

West's F.S.A. § 825.102

West's Florida Statutes Annotated Currentness
 Title XLVI. Crimes (Chapters 775-899)
  ◄■ Chapter 825. Abuse, Neglect, and Exploitation of Elderly Persons and Disabled Adults (Refs & Annos)
    ➡825.102. Abuse, aggravated abuse, and neglect of an elderly person or disabled adult; penalties

(1) "Abuse of an elderly person or disabled adult" means:

(a) Intentional infliction of physical or psychological injury upon an elderly person or disabled adult;

(b) An intentional act that could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult; or

(c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult.

A person who knowingly or willfully abuses an elderly person or disabled adult without causing great bodily harm, permanent disability, or permanent disfigurement to the elderly person or disabled adult commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(2) "Aggravated abuse of an elderly person or disabled adult" occurs when a person:

(a) Commits aggravated battery on an elderly person or disabled adult;

(b) Willfully tortures, maliciously punishes, or willfully and unlawfully cages, an elderly person or disabled adult; or

(c) Knowingly or willfully abuses an elderly person or disabled adult and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the elderly person or disabled adult.

A person who commits aggravated abuse of an elderly person or disabled adult commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(3)(a) "Neglect of an elderly person or disabled adult" means:

1. A caregiver's failure or omission to provide an elderly person or disabled adult with the care, supervision, and services necessary to maintain the elderly person's or disabled adult's physical and mental health, including, but not limited to, food, nutrition, clothing, shelter, supervision, medicine, and medical services that a prudent person would consider essential for the well-being of the elderly person or disabled adult; or

2. A caregiver's failure to make a reasonable effort to protect an elderly person or disabled adult from abuse, neglect, or exploitation by another person.

Neglect of an elderly person or disabled adult may be based on repeated conduct or on a single incident or omission that results in, or could reasonably be expected to result in, serious physical or psychological injury, or a substantial risk of death, to an elderly person or disabled adult.

(b) A person who willfully or by culpable negligence neglects an elderly person or disabled adult and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the elderly person or disabled adult commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(c) A person who willfully or by culpable negligence neglects an elderly person or disabled adult without causing great bodily harm, permanent disability, or permanent disfigurement to the elderly person or disabled adult commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

CREDIT(S)

Added by Laws 1995, c. 95-158, § 3, eff. July 1, 1995. Amended by Laws 1996, c. 96-322, § 2, eff. Oct. 1, 1996.

HISTORICAL AND STATUTORY NOTES

Amendment Notes:

Laws 1996, c. 96-322, § 2, eff. Oct. 1, 1996, in the section heading, inserted a reference to aggravated abuse; and rewrote the section, which formerly read:

"(1) A person who knowingly, willfully, or by culpable negligence abuses or neglects an elderly person or disabled adult and, in so doing, causes great bodily harm, permanent disfigurement, or permanent disability to the person commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

"(2) A person who knowingly, willfully, or by culpable negligence abuses or neglects an elderly person or disabled adult commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."

CROSS REFERENCES

   Blood specimen for DNA testing, see § 943.325.
   Employment screening standards, see §§ 435.03, 435.04.

LIBRARY REFERENCES

2006 Main Volume

   Assault and Battery ⊆48.
   Negligence ⊆1803.
   Westlaw Topic Nos. 272, 37.
   C.J.S. Assault §§ 1 to 3, 73, 78 to 80, 98.

RESEARCH REFERENCES

ALR Library

113 ALR 5th 431, Validity, Construction, and Application of State Civil and Criminal Elder Abuse Laws.

100 ALR 2nd 483, Homicide: Failure to Provide Medical or Surgical Attention.

Encyclopedias

53 Am. Jur. Proof of Facts 3d 1, Proof of Abuse, Neglect or Exploitation of Older Persons.

FL Jur. 2d Criminal Law § 3099, Periods of Limitation for Felonies and Misdemeanors.

FL Jur. 2d Criminal Law § 3367, Aggravated Manslaughter of Elderly Person or Disabled Adult.

FL Jur. 2d Criminal Law § 4741, Neglect or Abuse of Elderly Persons or Disabled Adults.

Treatises and Practice Aids

16 Florida Practice Series § 6.2, Enhancement of Penalty and Reclassification of Offense.

16 Florida Practice Series § 6.5, Capital Sentencing.

16 Florida Practice Series § 5.10, Use of More Than One Scoresheet.

16 Florida Practice Series § 9.19, Mandatory Dispositions.

NOTES OF DECISIONS

   Caregiver 5
   Duty of care 4
   Instructions 8
   Insurance fraud 3
   Invasion of privacy 2
   Standing 6
   Sufficiency of evidence 7
   Validity 1

   1. Validity

Neglect of elderly or disabled adult statute does not violate due process; statute proscribes neglect caused either wilfully or by culpable negligence, rather than simple negligent conduct. Sieniarecki v. State, 756 So.2d 68 (2000). Constitutional Law ⊙ 258(3.1); Negligence ⊙ 1801

Neglect of elderly or disabled adult statute was not unconstitutionally vague as applied, where defendant engaged in conduct clearly proscribed by statute. Sieniarecki v. State, 756 So.2d 68 (2000). Constitutional Law ⊙ 258(3.1); Negligence ⊙ 1801

Statutes regarding the neglect of the elderly or disabled were not facially unconstitutional as violating due process; statutes did not punish mere presence, or wholly passive conduct, but rather penalized the failure of a person to provide basic food, shelter, clothing and medical needs, only where he or she had assumed such a duty. Sieniarecki v. State, App. 4 Dist., 724 So.2d 626 (1998), review granted 729 So.2d 394, approved 756 So.2d 68. Constitutional Law ⊙ 258(3.1); Negligence ⊙ 1801

Defendant could not challenge vagueness of statutes regarding the neglect of the elderly or disabled since she engaged in conduct clearly proscribed by the meaning of the statutes. Sieniarecki v. State,

App. 4 Dist., 724 So.2d 626 (1998), review granted 729 So.2d 394, approved 755 So.2d 68.
Constitutional Law ⟞ 42.2(1)

### 2. Invasion of privacy

Defendant, who was convicted of neglect of disabled person arising from death of her mother, could
not challenge statute upon which conviction was partially based on ground that it violated mother's
right to privacy. Sieniarecki v. State, 756 So.2d 68 (2000). Constitutional Law ⟞ 42.2(1)

### 3. Insurance fraud

An action challenging an automobile liability insurer's allegedly wrongful conduct in obtaining a
release from the victim was a viable action independent of the victim's tort suit against the driver,
and, thus, the suit against the driver did not need to be resolved before the victim's suit against the
insurer for fraud and overreaching in obtaining the release, even though the validity of the release
was an important issue in the tort suit against the driver; although the victim alleged bad faith, she
was challenging the insurer's conduct claiming an unfair insurance trade practice and exploitation of
the elderly. Prudential Property and Cas. Ins. Co. v. Gerber, App. 5 Dist., 773 So.2d 571 (2000).
Insurance ⟞ 3379

### 4. Duty of care

Defendant had legal duty under common law and aggravated manslaughter of elderly or disabled
person statute to care for his elderly and disabled mother himself, or to obtain care for her from
others, and to make reasonable efforts to protect mother from abuse and neglect she suffered under
brother's care, where mother lived with defendant and brother in home owned by mother and
defendant, defendant and brother were entrusted with mother's property, and defendant and brother
agreed that brother would do actual work of caring for mother. Peterson v. State, App. 5 Dist., 765
So.2d 861 (2000), review denied 786 So.2d 1188. Homicide ⟞ 717

### 5. Caregiver

"Caregiver," within meaning of aggravated manslaughter of elderly or disabled person statute,
logically encompasses more than just person or persons who do actual physical work of caring for
elderly or disabled adult; it also reaches those who in fact are entrusted with responsibility for seeing
that elderly or disabled adult is being cared for in proper and humane manner. Peterson v. State,
App. 5 Dist., 765 So.2d 861 (2000), review denied 786 So.2d 1188. Homicide ⟞ 717

### 6. Standing

Defendant lacked standing to raise facial vagueness challenge to neglect of elderly or disabled adult
statute, where defendant engaged in conduct clearly proscribed by statute. Sieniarecki v. State, 756
So.2d 68 (2000). Constitutional Law ⟞ 42.2(1)

### 7. Sufficiency of evidence

Evidence was insufficient to show that defendant willfully or by culpable negligence neglected a
disabled person as charged; defendant, a psychiatric technician, was supposed to monitor patient on
suicide watch every 15 minutes and was also responsible for continuously watching another patient
housed in unlocked room and deemed dangerous, defendant could not physically implement both
watch orders, defendant, who had no authority to change orders, by necessity had to choose between
patients he was to watch, and exercised his discretion and continuously watched patient deemed
dangerous, and although unattended patient under 15-minute watch order died of heart attack,
defendant possessed no ill motive towards deceased patient. Jones v. State, App. 1 Dist., 912 So.2d
686 (2005). Health ⟞ 989

### 8. Instructions

Case 9:07-cv-80063-KLR   Document 1   Entered on FLSD Docket 01/23/2007   Page 69 of 79
01/11/2007 14:55 FAX  3056707065                                                    ☑008/017

JAN-11-2007  13:36          GEICO 2959                         863 646 9727    P.008

In prosecution for aggravated manslaughter of an elderly person, defendant was not entitled to
special jury instruction on causation; state alleged that victim's death was caused by defendant's
failure to provide medical care, and causation in that regard was defined by culpable negligence
statute. Bayer v. State, App. 5 Dist., 788 So.2d 310 (2001), rehearing denied, review denied 816
So.2d 125. Homicide ☞ 1400

West's F. S. A. § 825.102, FL ST § 825.102
Current through Chapter 316 and S.J.R. No. 2788 (End) of the 2006 Second
Regular Session of the Nineteenth Legislature

© 2006 Thomson/West
END OF DOCUMENT

(C) 2006 Thomson/West, No Claim to Orig. U.S. Govt. Works.

📖 West Reporter Image (PDF)

765 So.2d 861, 25 Fla. L. Weekly D1974
District Court of Appeal of Florida,
Fifth District.
Lee Ellis PETERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-1925.
Aug. 18, 2000.

Defendant was convicted in the Circuit Court, Osceola County, Reginald K. Whitehead, J., of aggravated manslaughter of elderly or disabled person, and he appealed. The District Court of Appeal, W. Sharp, J., held that defendant had legal duty under common law and aggravated manslaughter of elderly or disabled person statute to care for his elderly and disabled mother himself, or to obtain care for her from others, and to make reasonable efforts to protect mother from abuse and neglect she suffered under brother's care.
Affirmed.
Cobb, J., dissented and filed opinion.

West Headnotes

[1] KeyCite Notes 

⚬─203 Homicide
   ⚬─203IV Manslaughter
      ⚬─203k716 Parties to Offense
         ⚬─203k717 k. In General. Most Cited Cases
            (Formerly 203k82)

Defendant had legal duty under common law and aggravated manslaughter of elderly or disabled person statute to care for his elderly and disabled mother himself, or to obtain care for her from others, and to make reasonable efforts to protect mother from abuse and neglect she suffered under brother's care, where mother lived with defendant and brother in home owned by mother and defendant, defendant and brother were entrusted with mother's property, and defendant and brother agreed that brother would do actual work of caring for mother. West's F.S.A. § 825.102(3).

[2] KeyCite Notes 

⚬─203 Homicide
   ⚬─203IV Manslaughter
      ⚬─203k716 Parties to Offense
         ⚬─203k717 k. In General. Most Cited Cases
            (Formerly 203k82)

"Caregiver", within meaning of aggravated manslaughter of elderly or disabled person statute, logically encompasses more than just person or persons who do actual physical work of caring for elderly or disabled adult; it also reaches those who in fact are entrusted with responsibility for seeing that elderly or disabled adult is being cared for in proper and humane manner. West's F.S.A. §§ 825.101(2), 825.102(3).

[3] KeyCite Notes

☞203 Homicide
  ☞203IV Manslaughter
    ☞203k716 Parties to Offense
      ☞203k717 k. In General. Most Cited Cases
        (Formerly 203k82)

Aggravated manslaughter defendant, as part owner of premises where defendant's mother suffered
gross neglect which resulted in her death, had duty to safeguard mother from dreadful living
conditions she was forced to endure in their home.



KeyCite Notes
[4]

☞203 Homicide
  ☞203IV Manslaughter
    ☞203k716 Parties to Offense
      ☞203k717 k. In General. Most Cited Cases
        (Formerly 203k82)

Aggravated manslaughter defendant and his brother assumed the special relationship with their
elderly mother, who subsequently died from lack of care, due to facts that defendant and mother
jointly owned home, that brother lived in home, and that mother was completely unable to care for
herself. Restatement (Second) of Torts § 324 (1965).
**862 James B. Gibson, Public Defender, and Barbara C. Davis, Assistant Public Defender, Daytona
Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Belle B. Schumann, Assistant Attorney
General, Daytona Beach, for Appellee.

W. SHARP, J.
Lee Peterson appeals from his conviction for the statutory offense of aggravated manslaughter of an
elderly or disabled person, in connection with the death of his 82-year-old mother. Section 782.07(2),
Florida Statutes, declares that a person who causes the death of an elderly or disabled person by
culpable negligence, under circumstances set forth in section 825.102(3), commits aggravated
manslaughter. Neglect of an elderly or disabled person is defined by section 825.102(3) as:
(a)1. A caregiver's failure or omission to provide an elderly person or disabled adult with the care,
supervision, and services necessary to maintain the elderly person's or disabled adult's physical and
mental health, including, but not limited to, food, nutrition, clothing, shelter, supervision, medicine,
and medical services that a prudent person would consider essential for the wellbeing of the elderly
person or disabled adult; or
2. A caregiver's failure to make a reasonable effort to protect an elderly person or disabled adult from
abuse, neglect, or exploitation by another person.
Neglect of an elderly person or disabled adult may be based on repeated conduct or on a single
incident or omission that results in, or could reasonably be expected to result in, serious physical or
psychological injury, or a substantial risk of death, to an elderly person or disabled adult.
The statute also includes two lesser offenses:
(b) A person who willfully or by culpable negligence neglects an elderly person or disabled adult and
in so doing causes great bodily harm, permanent disability, or permanent disfigurement **863 to the
elderly person or disabled adult commits a felony of the second degree, punishable as provided in s.
775.082, s. 775.083, or s. 775.084.
(c) A person who willfully or by culpable negligence neglects an elderly person or disabled adult
without causing great bodily harm, permanent disability, or permanent disfigurement to the elderly
person or disabled adult commits a felony of the third degree, punishable as provided in s. 775.082,
s. 775.083, or s. 775.084.
We affirm.

01/11/2007 14:56 FAX  3056707065                                                        ☑011/017
JAN-11-2007  13:36            GEICO 2959                              863 646 9727   P.011

[11] 🔲  Peterson's primary argument on appeal is that he bears no criminal liability in this case for the death of his mother because he never assumed any of her actual, physical care taking, and thus under the statute, he was not her "caregiver." The statute defines "caregiver" as:
'Caregiver' means a person who has been entrusted with or has assumed responsibility for the care or the property of an elderly person or disabled adult. 'Caregiver' includes, but is not limited to relatives, court-appointed or voluntary guardians, adult household members, neighbors, health care providers, and employees and volunteers of facilities as defined in subsection (7).
§ 825.101(2), Fla. Stat.

We think the evidence in this case was sufficient to establish a breach of duty owed by Peterson under the statute, as a "caregiver," as well as under the common law. The facts in this case are as egregious as those described by Justice Lewis in Sieniarecki v. State, 756 So.2d 68 (Fla.2000), and the courts in People v. Simester, 287 Ill.App.3d 420, 222 Ill.Dec. 838, 678 N.E.2d 710 (1997) and Davis v. Commonwealth of Virginia, 230 Va. 201, 335 S.E.2d 375 (1985). An elderly, disabled and helpless person is left alone, awash in his or her own human wastes, with resulting bed sores so extensive and severe as to have culminated in life-threatening sepsis, and there is additional evidence that the person was malnourished to the point of starvation, and severely dehydrated, while occupying a room in a house where another adult family member, or members, reside. The result of the culpable neglect is death. A moral duty was clearly breached by the adult family members living in the house where the elderly person suffered such abject neglect, we all agree. But we also think a legal duty was breached, as those three cases concluded. [FN1]

> FN1. Indeed, if no legal duty exists in this case or the three cases cited above, the law extends less concern and protection for disabled or elderly adults than there is for cats and dogs, a truly anomalous situation. See § 828.12, Fla. Stat.; Wilkerson v. State, 401 So.2d 1110 (Fla.1981); C.E. America, Inc. v. Antinori, 210 So.2d 443 (Fla.1968).

In this case, two brothers, James and Lee Peterson (the appellant) shared a home with their mother (the deceased) for nineteen years. The house was owned jointly by Lee and his mother. Lee worked very long hours, and it was agreed between the brothers that James would do the physical cleaning, feeding, bed-changing, etc., for their mother. She suffered from Alzheimer's disease, and was cranky and hard to deal with. They also agreed that James would receive his mother's social security checks, deposit them in a joint account with himself and his mother, and from that account, pay all of the household expenses for the three of them, including the mortgage payment on the house. During the last six months of Mrs. Peterson's life, she was not doing well. For the last two months, as Lee described her, all she could do was sit on the edge of her bed and try to read the newspaper, or look at the pictures. She was bedridden the last two weeks prior to her death. Lee testified he visited her almost every day, or evening when he got home.

According to the medical experts, Mrs. Peterson was probably immobilized in bed during the last two weeks of her life because she was severely constipated, due to dehydration. She had not had a bowel *864 movement for two weeks prior to her death. This condition led to impaction of her colon, and its eventual rupture, which caused deadly peritonitis. She must have been in extreme pain. The colon ruptured at least two or three days before James called 911 and Mrs. Peterson was taken to the hospital. By then, she had less than a one percent chance to survive.

The police officers and the paramedics who went to the Petersons' home testified as to the horrendous condition of Mrs. Peterson's living circumstances. It was very hot in her room, there was no air conditioning, and no windows were open. The odor in the house and, in particular in her room from human waste, made them ill. The carpet was stained with human waste and feces. The mattress was soaked through with urine, sagging almost to the floor. Mrs. Peterson had been lying in a deep indentation in the mattress contaminated with urine and feces. This had caused her bed sores to reach an extreme state of ulceration. At trial, medical experts testified it would have taken several weeks for bed sores to have become as extensive and severe as hers were, at the time of her death.

[2] 🔲  Lee argues that he, as opposed to James, [FN2] could not be found to have violated section 825.102(3) because he took no active role with regard to his mother's care, and thus was not a

"caregiver." This is too narrow an interpretation of the term "caregiver." "Caregiver" logically encompasses more than *just* the person or persons who do the actual physical work of caring for an elderly or disabled adult. It also reaches those who *in fact* are "entrusted" with the responsibility for seeing that an elderly or disabled adult is being cared for in a proper and humane manner.

FN2. James was convicted of aggravated manslaughter in a joint trial with Lee, but he did not appeal.

The facts in this case established that Mrs. Peterson was a completely helpless, disabled elderly person, in the custody of her two sons. They also were *in fact* entrusted with her property (her social security income and her house). They agreed between themselves that James would do the actual work of caring for her. That did not excuse Lee from the duty of *overseeing* James' care. The jury had a basis to conclude James was culpably negligent, and in turn, Lee must have known about it. *People v. Simester* is factually close to this case. There the husband of a niece who had undertaken to care for her elderly uncle in their household, was held criminally liable for the uncle's death, when the uncle died due to starvation and dehydration suffered in their home. The niece in that case, had, as James did in this case, done the physical labor (such as it was) in caring for the uncle. The statute in Illinois is worded differently than the Florida statute in this case, but in our view, they mean the same thing.
The Illinois statute defines "caregiver" as one who has a duty to provide for an elderly person's health and personal care at the person's place of residence, including relatives who reside in the same residence. [FN3] The Illinois court held that the husband was a caregiver because he resided in the same household as the deceased, *865 whether he undertook the physical labor of taking care of the uncle. Although the court did not elaborate on whether the husband had a caretaking duty, it assumed he did. The Florida statute has truly parallel provisions. A caregiver is defined as one "entrusted with ... the care or property of an elderly, or disabled person," and the term includes "adult household members."

FN3. § 12.21. Criminal neglect of an elderly or disabled person.

(3) 'Caregiver' means a person who has a duty to provide for an elderly or disabled person's health and personal care, at such person's place or

residence, including but not limited to, food and nutrition, shelter, hygiene, prescribed medication and medical care and treatment.

'Caregiver' shall include:    ..     ....... .

(A) a parent, spouse, adult child or other relative by blood or marriage who resides with or resides in the same building with and regularly visits the elderly or disabled person, knows or reasonably should know of such person's physical or mental impairment and knows or reasonably should know that such person is unable to adequately provide for his own health and personal care.

*Sieniarecki* has less relevance to Lee's liability in this case. *Sieniarecki* upheld the criminal liability of a daughter, who like James, had assumed actual physical care of her disabled mother, who was living in her household. It did not deal with the duty or criminal liability under the statute of another adult member of the household.

Case 9:07-cv-80063-KLR   Document 1   Entered on FLSD Docket 01/23/2007   Page 74 of 79
01/11/2007  14:57 FAX  3056707065                                                                      013/017

JAN-11-2007  13:37          GEICO 2959                              863 646 9727     P.013

[31] However, the court speculated about whether a common law duty exists, pre-dating the statutory one imposed by section 825.102(3). In footnote two on page nine of its opinion, the court infers that such duties do exist by citing with approval *Personal Representative of Estate of Starling v. Fisherman's Pier, Inc.*, 401 So.2d 1136 (Fla. 4th DCA 1981), rev. denied, 411 So.2d 381 (Fla.1981). That case held that a property owner may have a duty to take some minimal steps to safeguard an invitee on his premises from extreme danger, even where the invitee through his own negligence, has allowed himself to be exposed to that danger in the first place. In this case, Lee Peterson, as part owner of the premises where the deceased suffered gross neglect, had a duty to safeguard his mother from the dreadful living conditions she was forced to endure, in their home.

[4] *Sieniarecki* also cited *People v. Oliver*, 210 Cal.App.3d 138, 258 Cal.Rptr. 138 (1989). That case imposed criminal liability on a young woman who took a stranger to her home who later became helpless from a heroin overdose, because she failed to seek medical aid for him. That case was based on an assumed "special relationship." *See* Restatement (Second) of Torts § 324 (1965). In our view, both James and Lee assumed this special relationship with their mother, due to their joint living arrangements and her complete inability to care for herself.

In *Davis,* the Virginia Supreme Court upheld the criminal liability of a daughter for the death of her elderly, completely disabled mother caused by her daughter's neglect. The deceased died of starvation, dehydration, and being subjected to cold temperatures. Her room had no heat. There was no statutory basis in Virginia upon which the court could rely to impose a duty of care. The defendant argued she had no legal duty to care for her mother. However, the court found a common law duty, based on the evidence in the case that the daughter had accepted the responsibility for the care of her mother. Very similar to the facts in this case, it was clear in *Davis* that the mother was completely disabled and helpless to care for herself, the mother allowed the daughter to live in her home, and she shared with the daughter her social security income and food stamps. The court concluded: Davis was more than a mere volunteer; she had a legal duty, not merely a moral one, to care for her mother.

335 S.E.2d at 378.
We conclude that Lee Peterson (jointly with his brother James) had a legal duty, under the circumstances of this case, be it *via* common law or section 825.102(3), to care for his mother, himself, or to obtain care for her from others, and to make reasonable efforts to protect her from the abuse and neglect she suffered under the "care" of James.
AFFIRMED.


THOMPSON, C.J., concurs.

COBB, J., dissents with opinion.


COBB, J., dissenting.
The central point on appeal concerns whether under *866 section 825.101(2), Florida Statutes, the defendant was a "caregiver" and thus subject to criminal prosecution for neglecting the needs of his 82 year old mother.
The defendant and his brother James (who is not a party to this appeal) were each charged with and convicted of aggravated manslaughter of an elderly or disabled person following the death of their mother Alice. The three had lived together for many years. The evidence at trial was that when medical assistance was finally summoned for Alice (who had previously made it clear she did not like doctors), she was found to be living in filthy conditions which seriously compromised her health and which in fact ultimately led to her death.
The defendant and his brother were charged with violating section 782.07(2), Florida Statutes, which provides:
A person who causes the death of any elderly person or disabled adult by culpable negligence under s. 825.102(3) commits aggravated manslaughter of an elderly person or disabled adult, a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Section 825.102(3), Florida Statutes, provides:

Case 9:07-cv-80063-KLR Document 1 Entered on FLSD Docket 01/23/2007 Page 75 of 79
01/11/2007 14:57 FAX 3056707065 ☐014/017

JAN-11-2007 13:37 GEICO 2959 863 646 9727 P.014

(3)(a) "Neglect of an elderly person or disabled adult" means:
1. A *caregiver's* failure or omission to provide an elderly person or disabled adult with the care, supervision, and services necessary to maintain the elderly person's or disabled adult's physical and mental health, including, but not limited to, food, nutrition, clothing, shelter, supervision, medicine, and medical services that a prudent person would consider essential for the well-being of the elderly person or disabled adult; or
2. A *caregiver's* failure to make a reasonable effort to protect an elderly person or disabled adult from abuse, neglect, or exploitation by another person.
Neglect of an elderly person or disabled adult may be based on repeated conduct or on a single incident or omission that results in, or could reasonably be expected to result in, serious physical or psychological injury, or a substantial risk of death, to an elderly person or disabled adult.
(b) A person who willfully or by culpable negligence neglects an elderly person or disabled adult and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the elderly person or disabled adult commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(c) A person who willfully or by culpable negligence neglects an elderly person or disabled adult without causing great bodily harm, permanent disability, or permanent disfigurement to the elderly person or disabled adult commits a felony of the third degree, punishable as provided in s. 775.082, 775.083, or s. 775.084.
(Emphasis added).
The term "caregiver" is defined in section 825.101(2), Florida Statutes, as follows:
"Caregiver" means a person who has been entrusted with or has **assumed responsibility** for the care or the property of an elderly person or disabled **adult**. "Caregiver" includes, but is not limited to relatives, court-appointed or **voluntary** guardians, **adult** household members, neighbors, health care providers, and employees and volunteers of facilities as defined in subsection (7).
Under this statutory scheme invoked by the prosecutor, a "caregiver" is subject to criminal penalties where the "caregiver" neglects the needs of an elderly person or disabled adult either willfully or by culpable negligence. Under Florida law, the failure to act where one has a legal duty to act may constitute culpable negligence. *See e.g., Leet v. State, 595 So.2d 959 (Fla. 2d DCA 1991)*(failure to protect child from *\*867* abuse despite clear indications that child was being abused subjected defendant to criminal sanctions under section 827.04(1), Florida Statutes).
The defendant, in moving for a judgment of acquittal, argued that he was not a "caregiver" because he was neither entrusted with nor assumed any responsibility for his mother's care. The defendant points to uncontradicted evidence that James agreed to assume responsibility for the care of their mother and that the defendant was not involved in his mother's care. The defendant argues that his mere presence in the home did not make him a "caregiver." He asserts that the statutory scheme does not punish mere presence or wholly passive conduct.
In *Sieniarecki v. State, 756 So.2d 68 (Fla.2000)*, the supreme court approved the Fourth District Court of Appeal decision in *Sieniarecki v. State, 724 So.2d 626 (Fla. 4th DCA 1998)*, which sustained the defendant's conviction under section 825.102(3) and upheld the constitutionality of that section. In particular, the defendant in *Sieniarecki* had asserted that section 825.102(3) was unconstitutionally vague and violated due process by imposing an affirmative duty upon an adult child to care for her elderly mother. The evidence in *Sieniarecki* was that it had been agreed among the family that the defendant would assume the care for her debilitated mother and the mother moved in with her daughter. The daughter then failed to adequately address her mother's basic needs and the mother died under circumstances somewhat similar to those found in the instant case. In addressing the issue of the duty of the petitioner/defendant daughter to her debilitated mother, the supreme court explained:
Petitioner asserts that section 825.102(3) creates an affirmative duty "to provide care, supervision, or services to another person" not recognized at common law. In this case, *petitioner--who assumed responsibility for the day-to-day care of her disabled mother*--was in a unique position to assist her mother and to make other potential sources of assistance aware of her mother's needs. *Cf. Estate of Starling v. Fisherman's Pier, Inc., 401 So.2d 1136, 1137-38 (Fla. 4th DCA), review denied, 411 So.2d 381 (Fla.1981)*(holding that a proprietor may have a duty to "take some minimal steps to safeguard" an invitee upon his premises from extreme danger, even where the invitee, through his own negligence, illness, injury or drunkenness "has allowed himself to be exposed to that danger in the first place"); *People v. Oliver, 210 Cal.App.3d 138, 258 Cal.Rptr. 138, 144 (1989)*(recognizing-- in affirming Oliver's conviction for involuntary manslaughter based upon her failure to seek medical aid

for the victim, a man she had met at a bar and brought to her home, who died of a heroin overdose-- a duty to act arising from a special relationship [derived in part from Restatement (Second) of Torts § 324 (1965), providing that "[o]ne who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by ... the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge"] created when Oliver took the victim "from a public place where others might have taken care to prevent him from injuring himself, to a private place—her home-- where she alone could provide such are"). But cf. Nevells v. State, 145 So.2d 883, 884 (Fla. 1st DCA 1962)(holding that Nevells, who failed to "aid or otherwise be concerned with the safety of his wife" during the intervening period between the time when he first discovered her lying on the floor and four hours later, when he called an ambulance, was not guilty of manslaughter based upon culpable negligence). Regardless of whether the subject legislation created a new duty, or codified an existing common law duty, with respect to the acts and omissions of *868 an adult child who assumes the day-to-day care of a disabled parent living in the same household, it is clear the Legislature now intends to provide liability for such caretaker's culpable negligence resulting in neglect of the disabled adult. Cf. Eversley v. State, 748 So.2d 963 (Fla.1999)(observing that, "by making a specific reference to the child abuse statute, it is clear that the Legislature now intends to include the failure to provide medical care within the definition of manslaughter," and had the amended statutes "been in effect at the time of the alleged crime in this case, Eversley's conduct [in failing to obtain needed medical care for her infant son] would have been punishable as manslaughter," but holding that, because the alleged crime took place prior to the effective date of the amendments, the finding in Bradley v. State, 79 Fla. 651, 84 So. 677 (1920), that a parent's failure to provide needed medical care for his child does not rise to the level of culpable negligence required for the manslaughter statute "controls, and the trial court was correct in granting the motion for judgment of acquittal as to the manslaughter charge"). (Emphasis added).

756 So.2d at 73, n. 2.
The supreme court's discussion seems consistent with the Fourth District's dictum that the statutes at issue "do not punish mere presence, or wholly passive conduct, but rather penalize the failure of a person to provide basic food, shelter, clothing and medical needs, only where he or she has assumed such a duty." 724 So.2d at 627 (emphasis added). Indeed, under the common law there existed no obligation on adult children to care for their aging parents. See People v. Heitzman, 9 Cal.4th 189, 37 Cal.Rptr.2d 236, 886 P.2d 1229 (1994). The Florida statutory scheme does not create a per se duty of care on the part of adult children toward their elderly parents. It rather is designed to criminalize the conduct of those who have assumed such a duty and breached said duty willfully or through culpable negligence.
In the instant case, unlike the situation in Sienlarecki, no evidence was presented that by express agreement the defendant was entrusted with responsibility for his elderly mother's care or that he assumed responsibility for her care. [FN1] Certainly he did nothing toward her care. The state points out that the defendant lived with his mother for many years under an arrangement whereby he lived off her income (which was used to make the monthly mortgage payment). The state argues this evidence establishes an implied contract whereby the defendant accepted the benefit of his mother's income and in exchange owed her a duty of care. Under this argument, however, an adult child who accepts largesse from his or her elderly or disabled parent would automatically become a "caregiver" and owe a legal duty to care for such parent. Suffice it to say we deal here with a criminal statute which must be strictly, not expansively, construed. See State v. Jackson, 526 So.2d 58 (Fla.1988).

> FN1. The only evidence available to the state's case in this regard was testimony by a detective that James said that occasionally the defendant would help out. At trial, however, James testified this statement was inaccurate, that the defendant was not directly involved in his mother's care. The prior inconsistent statement, standing alone, was insufficient as a matter of law to establish guilt beyond a reasonable

> doubt. See State v. Green, 667 So.2d 756 (Fla.1995).

The state additionally argues that the defendant could not abdicate legal responsibility for his infirm

mother's care by simply ignoring her needs. The state analogizes this to the duties owed by a parent to a minor child, see *Nicholson v. State*, 600 So.2d 1101 (Fla.1992), but such a relationship involves a legally recognized duty of care going back to the common law. This court should decline the state's invitation to create, under the criminal code, a legal duty of care on the part of an adult child toward his or her infirm parents. *869 That is a legislative task infused with public policy considerations, not a judicial task. Likewise, any anomaly in permitting prosecution of one who undertakes to care for an infirm adult but breaches said duty while omitting prosecution of one who simply ignores the needs of such a person is properly brought to the attention of the legislature.

The state relies on *Leet v. State*, 595 So.2d 959 (Fla. 2d DCA 1991) wherein the Second District held that a jury could properly determine that the defendant had a legal duty under section 827.04(1), Florida Statutes to protect his girlfriend's child from the girlfriend's acts of abuse and that his failure to do so constituted culpable negligence. Section 827.04(1) provided:

*Whoever*, willfully or by culpable negligence, deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment, or who, knowingly or by culpable negligence, inflicts or permits the infliction of physical or mental injury to the child, and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to such child, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(Emphasis added).
The evidence established that the defendant allowed his girlfriend and her one year old son to move into his home on a permanent basis and that the girlfriend cared for the child at times. There was clear evidence that the girlfriend abused her son and that the defendant did nothing. *Leet* is predicated on section 827.04(1) which by use of the word "whoever" includes within its coverage anyone, not just a parent, who knowingly or by culpable negligence, permits the infliction of physical or mental injury to a child. That statutory language is much broader than the definition of "caregiver" adopted by the legislature in section 825.101(2).

The majority's reliance on statutes criminalizing animal cruelty [FN2] and animal abandonment [FN3] is likewise misplaced as those statutes criminalize such conduct by any person who commits the proscribed acts. Nor is reliance on *People v. Simester*, 287 Ill.App.3d 420, 222 Ill.Dec. 838, 678 N.E.2d 710 (1997) appropriate. In *Simester* a husband and wife were successfully prosecuted for criminal neglect of an elderly person. The husband testified that his wife was **responsible** for the care of her uncle and that he had no **responsibility** for the uncle's care. The three lived together in the same house. The definition of "caregiver" in Illinois included:

FN2. § 828.12, Fla. Stat.

FN3. § 828.13, Fla. Stat.

"a parent, spouse, adult child or other relative by blood or marriage who resides with or resides in the same building with and regularly visits the elderly or disabled person, knows or reasonably should know of such person's physical or mental impairment and knows or reasonably should know that such person is unable to adequately provide for his own health and personal care," 720 ILCS 5/12--21(b)(3)(A) (West 1994). (Emphasis added).
678 N.E.2d at 714. This is a far more expansive definition of the term than that found in section 825.101(2), Florida Statutes.
Finally, the state's alternate argument is that under section 825.102(3)(a) 2, neglect of an elderly person or disabled adult includes a caregiver's failure to make a reasonable effort to protect said person from abuse, neglect or exploitation by another person. The state's position is that even assuming *arguendo* that the defendant was not responsible for his mother's care, he still had a statutory duty to protect his mother from neglect or mistreatment by James. However, once again, this statutory duty is placed upon a "caregiver." The defendant was not a "caregiver." Criminal liability can only be imposed for the failure *870 to act where a legally recognized duty to act exists. See *Leet*. No such duty existed here under the statutes invoked by the prosecutor and the defendant's motion for judgment of acquittal should have been granted.

1/11/2007 14:59 FAX  3056707065                                                      017/017

JAN-11-2007  13:38        GEICO 2959                      863 646 9727    P.017

I would reverse.
Fla.App. 5 Dist.,2000.
Peterson v. State
765 So.2d 861, 25 Fla. L. Weekly D1974
END OF DOCUMENT

West Reporter Image (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

JS 44 (Rev. 11/05)

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

GOVERNMENT EMPLOYEES INSURANCE COMPANY

**DEFENDANTS**

ANDREA PATTERSON, JOEL PATTERSON and MARLENE PATTERSON

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Palm Beach
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Edward J. O'Sheehan, Esq. and Frank A. Zacherl, Esq., Shutts & Bowen LLP, 200 E. Broward Blvd., Suite 2100, Ft. Lauderdale, FL 33301; Telephone: (954) 524-5505; Fax: (954) 888-3071

Attorneys (If Known)

**07-80063**

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☑ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

*9:07CV 80063 Dmm-Johnson*

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO     b) Related Cases ☐ YES ☑ NO

JUDGE _____    DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

Declaratory Judgment Action with jurisdiction based on diversity under 28 U.S.C. Section 1332.

LENGTH OF TRIAL via ONE days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Declaratory Judgment

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD    DATE

*Edward J O'Sheehan*    22 Jan 07

FOR OFFICE USE ONLY
AMOUNT _____    RECEIPT # _____